# 25-2108-cv(L), 25-2109-cv(XAP)

## United States Court of Appeals

### *for the*

## Second Circuit

SIXTY LOWER EAST SIDE, LLC, SIXTY HOTELS, LLC,
SIXTY HOTEL MANAGER, LLC,

*Defendants-Appellants-Cross-Appellees,*

– v. –

MARGARET BETTS,

*Plaintiff-Appellee-Cross-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANTS-APPELLANTS-CROSS-APPELLEES

MICHAEL J. CURTIS
CHRISTOPHER R. THEOBALT
KAHANA & FELD LLP
*Attorneys for Defendants-Appellants-Cross-Appellees*
800 Third Avenue, 16th Floor
New York, New York 10033
(914) 787-9239

CP COUNSEL PRESS    (800) 4-APPEAL • (388908)

## CORPORATE DISCLOSURE STATEMENT
## <u>PURSUANT TO F.R.A.P. 26.1</u>

Pursuant to F.R.A.P. 26.1, I hereby certify the following:

No publicly held corporation owns 10% or more of any stock of Sixty Lower East Side, LLC, Sixty Hotels, LLC, or Sixty Hotel Manager, LLC. The managing and sole member of Sixty Lower East Side, LLC, is Sixty Hotels LLC. The entities otherwise have no corporate parents.

Dated: New York, New York
      February 2, 2026

                    Respectfully submitted,

                    **KAHANA & FELD, LLP**

                    By: Michael J. Curtis, Esq.
                    *Appellate Counsel for*
                    *Defendants-Appellants-Cross-Appellees*
                    800 Third Avenue, 16th Floor
                    New York, NY 10022
                    (914) 787-9239
                    mcurtis@kahanafeld.com

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ...............................................................1

JURISDICTIONAL STATEMENT ..........................................................3

STATEMENT OF ISSUES ....................................................................4

STANDARD OF REVIEW ....................................................................4

STATEMENT OF THE CASE.................................................................5

    A.    The Assault, Parties, and Instant Action ..................................5

    B.    The Summary Judgment Motions and Decision ..................................7

    C.    The Relevant Pre-Trial and Trial Rulings...........................................9

    D.    The Trial Evidence and Argument ........................................10

        1.    Plaintiff's Testimony ....................................................10

        2.    Dr. Joseph Otonichar (Plaintiff's Expert Psychiatrist) .............10

        3.    Dr. Julie Medlin (Defendants' Expert Psychologist)................12

        4.    Plaintiff Counsel's Summation .................................................14

        5.    The Jury Charges ..................................................16

        6.    The Verdict ....................................................17

    E.    The Post-Trial Motion and Decision.................................................17

ARGUMENT .........................................................................18

POINT I

THE DISTRICT COURT ERRED IN GRANTING PLAINTIFF
SUMMARY JUDGMENT BASED ON DEFENDANTS'
PURPORTED VIOLATION OF EDUCATION LAW § 7802 ....................18

    A.    Governing Law..................................................18

B.     Defendants Did Not Claim to be Engaged in Massage Therapy .................................................................................... 19

C.     Astakhov Was Licensed in Compliance with the Statute ................. 21

D.     The District Court Erred in Making "New Law" To Find The Hotel Defendants Negligent *Per Se* .................................................... 25

    1.     Negligence *Per Se* ..................................................................... 25

    2.     The District Court's Negligence *Per Se* Lawmaking .............. 26

E.     The District Court's Proximate Cause Finding Is Unsustainable .................................................................................... 30

POINT II

THIS COURT SHOULD MODIFY THE JURY'S IRRATIONAL APPORTIONMENT OF FAULT .................................................... 36

POINT III

THE JURY'S AWARD IS EXCESSIVE UNDER CPLR 5501(C) ............. 40

A.     Applicable Law: CPLR 5501(c) ........................................................ 40

B.     *Remittitur* of the Jury's Pain and Suffering Award is Necessary ........................................................................................... 41

POINT IV

THE DISTRICT COURT'S ERRONEOUS EVIDENTIARY RULINGS REQUIRE A NEW TRIAL ........................................... 47

A.     The District Court Should Have Given a Missing Witness Charge For Plaintiff's Failure to Call Her Treating Psychiatrist .......................................................................................... 47

B.     The District Court Erred In Precluding Defendants From Introducing Dr. Fayer's Deposition Testimony ................................ 50

CONCLUSION ................................................................................................ 51

iii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

<u>Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.</u>,
   2025 U.S. App. LEXIS 30500 (2d Cir. Nov. 21, 2025).......................................40

<u>Amorgianos v. Amtrak</u>,
   303 F.3d 256 (2d Cir. 2002).........................................................................5

<u>AMW Materials Testing, Inc. v. Town of Babylon</u>,
   584 F.3d 436 (2d Cir. 2009)........................................................................5

<u>Article 13 LLC v. Ponce de Leon Fed. Bank</u>,
   132 F.4th 586 (2d Cir. 2025).......................................................................30

<u>Benaquista v Mun. Hous. Auth.</u>,
   212 A.D.2d 860 (App. Div. 1995) ..............................................................31

<u>Boateng v. BMW of N. Am., LLC</u>,
   2025 U.S. App. LEXIS 29455 (2d Cir. 2025) .............................................41

<u>Breest v. Haggis</u>,
   No. 161137/2017, 2023 WL 374404 (N.Y. Sup. Ct., N.Y. Cty. 2023) ........... 42-43

<u>Burlington Ins. Co. v. NYC Tr. Auth.</u>,
   29 N.Y.3d 313 (2017) ................................................................................31

<u>Camacho v. Rochester City Sch. Dist.</u>,
   20 A.D.3d 916 (N.Y. App. Div. 2005) ......................................................44

<u>Carole A. v. City of New York</u>,
   169 A.D.2d 800 (2d Dep't 1991) ...............................................................44

<u>Carroll v. Trump</u>,
   683 F. Supp. 3d 302 (S.D.N.Y. 2023), <u>aff'd</u>, 124 F.4th 140 (2d Cir. 2024) .......42

<u>Clark v. Flinn & Co.</u>,
   230 A.D. 698 (N.Y. App. Div. 1930) .........................................................39

<u>Curns v. Wal-Mart Stores, Inc.</u>,
   439 Fed. Appx. 51 (2d Cir. 2011) ...............................................................4

<u>Dalal v. City of NY</u>,
   262 A.D.2d 596 (App. Div. 1999) ..............................................................27

iv

Dance v. Southampton,
    95 A.D.2d 442 (App. Div. 1983) ............................................................. 27, 28, 34

Dayanim v. Unis,
    171 A.D.2d 579 (N.Y. App. Div. 1991) ........................................................ 47-48

Derdiarian v. Felix Contr. Corp.,
    51 N.Y.2d 308 (1980) ................................................................................... 32, 33

DeVito v. Feliciano,
    22 N.Y.3d 159 (2013) ...........................................................................................49

Dillon v. Kim,
    158 Misc.2d 711 (Sup. Ct. Nassau Cnty., 1993) ................................................29

Doe v. Alsaud,
    2017 U.S. Dist. LEXIS 167359 (S.D.N.Y. 2017)...............................................47

Doe v. Hyassat,
    2024 U.S. Dist. LEXIS 67482 (S.D.N.Y. 2024)..................................................46

Doe v. Spa,
    2003 NYLJ LEXIS 974 (N.Y. Sup. Ct. 2003)...............................................28, 29

Doe v. Warren,
    2024 U.S. Dist. LEXIS 106767 (S.D.N.Y. 2024)................................................46

Donlon v. City of New York,
    284 A.D.2d 13 (N.Y. App. Div. 2001) ......................................................... 41, 42

Earl v. Bouchard Transp. Co.,
    917 F.2d 1320 (2d Cir. 1990).............................................................................40

Erie R.R. v. Tompkins,
    304 U.S. 64 [1938] .............................................................................................40

Ezagui v. Dow Chemical Corp.,
    598 F.2d 727 (2d Cir. 1979)...............................................................................29

Feldman v. Knack,
    170 A.D.3d 667 (N.Y. App. Div. 2019) .............................................................45

Gagnon v. St. Clare's Hosp.,
    58 A.D.3d 960 (App. Div. 2009) ........................................................................49

Gasparini v. Center for Humanities, Inc.,
    518 U.S. 415 (1996) ...........................................................................................40

German v. Fed. Home Loan Mtge. Corp.,
    896 F. Supp. 1385 (S.D.N.Y. 1995) ....................................... 26, 27, 33

Glendale Fed. Bank, FSB v. United States,
    39 Fed. Cl. 422 (1997) ........................................................... 50

Gonzalez v. United States,
    80 F.4th 183 (2d Cir. 2023) ................................................... 41

Greenery Rehabilitation Group, Inc. v. Hammon,
    150 F.3d 226 (2d Cir. 1998) ................................................... 22

Haddock v. City of New York,
    140 A.D.2d 91 (1st Dep't 1988), aff'd 75 N.Y.2d 478 (1990) ........................... 44

Hai Long Du v. Party Perfect Rentals LLC,
    732 F. Supp. 3d 249 (EDNY 2024) ....................................... 48

Hain v. Jamison,
    28 N.Y.3d 524 (N.Y. 2016) ............................................... 32, 36

Hancock v. Cty. Of Rensselaer,
    882 F.3d 58 (2d Cir. 2018) ..................................................... 4

Hudson v. New York City,
    271 F.3d 62 (2d Cir. 2001) ..................................................... 5

In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.,
    725 F.3d 65 (2d. Cir. 2013) ................................................... 40

Jae Shin v. Party Well Rest. & Oriental Bakery, Inc.,
    2025 U.S. App. LEXIS 5728 (2d Cir. 2025) ............................... 5

Kranenberg v. TKRS Pub, Inc.,
    99 A.D.3d 767 (App. Div. 2012) ........................................... 35

Kukla v. Syfus Leasing Corp.,
    928 F. Supp. 1328 (S.D.N.Y. 1996) ....................................... 44

Laurie Marie M. v. Jeffrey T.M.,
    159 A.D.2d 52 (N.Y. App. Div. 1990) ................................... 45

Lee v. Bankers Trust Co.,
    166 F.3d 540 (2d Cir. 1999) ................................................... 22

Lower Manhattan Loft Tenants v. NY City Loft Bd.,
    66 N.Y.2d 298 (1985) ........................................................... 24

vi

Lynch v. Trek Bicycle Corp.,
374 Fed. Appx. 204 (2d Cir. 2010) ........................................................5

Maheshwari v. City of New York,
2 N.Y.3d 288 (2004) ..............................................................................33

Marvel Characters, Inc. v. Kirby,
726 F.3d 119 (2d Cir. 2013) ...................................................................4

Mashantucket Pequot Tribe v. Connecticut,
913 F.2d 1024 (2d Cir. 1990) ...............................................................20

Mathie v. Fries,
121 F.3d 808 (2d Cir. 1997) ..................................................................46

Mathis v. Board of Educ.,
126 A.D.3d 951 (App. Div. 2015) .........................................................35

Matter of Amorosi v. S. Colonie Ind. Cent. Sch. Dist.,
9 N.Y.3d 367 (2007) ..............................................................................22

Matter of DeNigris v. Smithtown Cent. Sch. Dist.,
217 A.D.3d 95 (App. Div. 2023) ...........................................................23

Noonan v. Becker,
2018 U.S. Dist. LEXIS 60704 (S.D.N.Y. 2018) ...................................46

Ortiz v. N.Y. City Hous. Auth.,
22 F. Supp. 2d 15 (E.D.N.Y. 1998), aff'd, 198 F.3d 234 (2d Cir. 1999) ....... 43, 44

Pantages v. L.G. Airport Hotel Assocs.,
187 A.D.2d 273 (1st Dep't 1992) ..........................................................44

Perney v. Medical One N.Y., P.C.,
2021 N.Y. Misc. LEXIS 644..................................................................45

Revercomb v. Aire Ancient Baths S.L.,
2019 N.Y. Misc. LEXIS 1567 (N.Y. Sup. Ct. 2019) ...........................29

Roseboro v. N.Y. City Trans. Auth.,
10 A.D.3d 524 (N.Y. App. Div. 2004) ......................................... 36, 37

Schneider v. National R.R. Passenger Corp.,
987 F.2d 132 (2d Cir. 1993)...................................................................44

Shor v. Touch-N-Go Farms, Inc.,
89 A.D.3d 830 (App. Div. 2011) ...........................................................35

Splawn v. Lextaj Corp.,
    197 A.D.2d 479 (1st Dep't 1993) ..........................................................44

Stampf v. Long Island R.R.,
    761 F.3d 192 (2d Cir. 2014)..................................................................40

Stevens v. N.Y. City Trans. Auth.,
    19 A.D.3d 583 (N.Y. App. Div. 2005) ............................................ 36, 37

Sutton v. Tapscott,
    120 F.4th 1115 (2d Cir 2024)..................................................................4

Timothy Mc. v. Beacon City Sch. Dist.,
    127 A.D.3d 826 (App. Div. 2015) ........................................................35

United States v. Caccia,
    122 F.3d 136 (2nd Cir. 1997)................................................................48

United States v. Goodrich,
    12 F.4th 219 (2d Cir. 2021)...................................................................31

United States v. Quattrone,
    441 F.3d 153 (2d Cir. 2006)....................................................................5

Vaneria v. Consolidated Edison Co.,
    No. 120968/97, 1999 WL 292644 (Sup. Ct., N.Y. Cnty. Feb. 10, 1999) ............33

Villalta v. JS Barkats, PLLC,
    2021 U.S. LEXIS 75071 (S.D.N.Y. 2021)..............................................47

Walker v. City of Buffalo,
    2025 U.S. Lexis 47995 (W.D.N.Y., Mar. 17, 2025) ...............................50

Wilson v. Bodian,
    130 A.D.2d 221 (App. Div. 1987) ........................................................49

## Statutes & Other Authorities:

28 U.S.C. § 1291 .......................................................................................3

28 U.S.C. § 1332 .......................................................................................3

Black's Law Dictionary (10th ed 2014)...................................................31

CPLR 1601.......................................................................................... 2, 9, 38

CPLR 5501(c) ................................................................................... *passim*

FRCP 59 ............................................................................................17

FRE 801(d)(2)(C)............................................................. 9, 18, 50, 51

New York Education Law § 6512(2) ...........................................25

New York Education Law 6815 .......................................................30

New York Education Law § 7802 ................................................ *passim*

New York Education Law § 7805 ...............................................21

New York Education Law § 7805(1) ...........................................21

New York Education Law § 7805(2) ...........................................21

New York Education Law § 7805(4) ...........................................21

New York Education Law 7807 ............................................ 23, 24, 25

New York Education Law §§ 7800-7807.............................. 24, 30

Siegel's New York Practice § 407, "Additur and Remittitur" (Third
    Edition) ....................................................................................45

## **PRELIMINARY STATEMENT**

In this civil action for personal injuries, defendants-appellants SIXTY LOWER EAST SIDE, LLC, SIXTY HOTELS, LLC, and SIXTY HOTEL MANAGER, LLC (hereinafter "Hotel Defendants" or "defendants") submit this brief in support of their appeal from the Judgment entered in this action on July 22, 2025 and the decision and order of the United States District Court for the Southern District of New York (Hon. Naomi Reice Buchwald, U.S.D.J.), dated and entered November 24, 2025, which denied defendants summary judgment dismissing plaintiff's complaint and affirmed the jury's verdict. For the following reasons, this Court should (1) reverse the judgment and dismiss the complaint or, alternatively, (2) order a trial on liability, (3) modify the jury's apportionment of fault and order a remittitur of its damages award or, alternatively, (4) order a new trial on apportionment and damages.

In October 2018, plaintiff Margaret Betts, then a guest of defendants' Manhattan hotel (the "Hotel"), was sexually assaulted while receiving an in-room massage. The masseuse, non-party Iouri Astakhov, digitally penetrated plaintiff's vagina, brushed her pubis, and pinched her nipple. Two days later, plaintiff returned home to Illinois and reported the incident to Hotel staff. She claims to experience lingering psychological trauma from the assault, mainly in the form of post-traumatic stress disorder and nightmares, though the bulk of this pathology predates the accident and stems from the childhood murder of plaintiff's infant sister,

1

dysfunctional family life, and decades of drug abuse – all documented by the treating psychiatrist that plaintiff declined to call at trial.

Deplorable though Astakhov's conduct was, the District Court wrongly imposed liability on defendants based on an incognizable negligence *per se* theory. The court "made law" (its words) by holding defendants liable for independent contractor Astakhov's failure to comply with New York's triennial registration requirement for massage licensees, disregarding state court decisions unanimously rejecting negligence *per se* based on this statutory provision. Worse, the court inferred that defendants' "negligence" proximately caused plaintiff's assault despite the glaring absence of evidence that they knew or should have known of Astakhov's proclivities.

The parties proceeded to a trial on apportionment and damages during which the District Court rightly permitted defendants to introduce evidence of Astakhov's culpability under CPLR 1601. In summation, plaintiff's counsel maligned defendant for exercising this statutory right, telling the jury that an insidious plot was underway to cheat plaintiff out of compensation by blaming the intentional criminal tortfeasor. Persuaded by this tripe, the jury found defendants and Astakhov equally liable and awarded plaintiff total damages of $2.75 million, all for pain and suffering.

Two blinding infirmities plague the verdict. First, it defies the record, New York law, common sense and basic notions of equity to saddle defendants with culpability

for plaintiff's assault equal to that of her assailant. This requires a reduction of defendants' liability share to a fractional amount. Second, the award is excessive under CPLR 5501(c), which requires modification of an award that "deviates materially" from reasonable compensation when compared with awards for similar injuries reviewed under the statute. Chief among the District Court's errors was its disregard of the decisions marshaled by defendants establishing that New York and federal courts seldom approve compensatory awards above six figures for sexual assault and, even then, do so only for victims of far more reprehensible and damaging conduct than that at issue. This requires *remittitur* of the jury's award to conform with the balance of awards approved under CPLR 5501(c) for similar wrongdoing.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action under 28 U.S.C. § 1332. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because on July 22, 2025, the District Court entered final judgment on the jury award (A-1697-99), and on August 21, 2025, Defendants-Appellants filed a timely notice of appeal from each and every part of the judgment (A-1696-1699). On November 24, 2025, Defendants-Appellants timely filed an amended notice of appeal from each and every part of the Judgment entered in this action on July 22, 2025, and from the Order dated and entered November 24, 2025, which denied the defendants' post-trial motion in all respects (A-1739-1776).

3

## STATEMENT OF ISSUES

1. Whether the District Court erred in granting plaintiff summary judgment on her Education Law § 7802 liability claim and, more specifically, whether the District Court erred in finding that such violation constituted negligence *per se* and was a proximate cause of plaintiff's assault;

2. Whether the jury's 50-50 apportionment was irrational and against the weight of the evidence;

3. Whether the jury's $2.75 million pain and suffering award is excessive and deviates from reasonable compensation under New York's CPLR 5501(c).

4. Whether the District Court erred in failing to give a missing witness charge relating to plaintiff's failure to call her treating psychiatrist at trial.

5. Whether the District Court erred in preventing defendants from introducing portions of plaintiffs' retained expert's deposition where the expert was never withdrawn as a trial witness but did not testify.

## STANDARD OF REVIEW

This Court reviews a District Court's grant of summary judgment *de novo*. See Hancock v. Cty. Of Rensselaer, 882 F.3d 58, 64 (2d Cir. 2018); Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 135 (2d Cir. 2013). In reviewing questions of state law not yet settled by the New York Court of Appeals, this Court must consider how that court would rule on the question. Sutton v. Tapscott, 120 F.4th 1115, 1119 (2d Cir 2024).

This Court reviews *de novo* whether a verdict should be set aside based on insufficient evidence. Curns v. Wal-Mart Stores, Inc., 439 Fed. Appx. 51, 53 (2d Cir. 2011).

This Court reviews damages awarded for state law claims under the relevant state law, here CPLR 5501(c), which requires modification of a damages award if it deviates materially from what would be reasonable compensation. See Jae Shin v. Party Well Rest. & Oriental Bakery, Inc., 2025 U.S. App. LEXIS 5728, *4 (2d Cir. 2025).

This Court reviews claims of error in jury instructions and verdict questions, under the de novo standard of review. See United States v. Quattrone, 441 F3d 153, 177 (2d Cir. 2006); AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 449-540 (2d Cir. 2009); Hudson v. New York City, 271 F.3d 62, 67 (2d Cir. 2001).

With respect to the District Court's evidentiary rulings the standard of review is based on an abuse of discretion, which will be found "if the court's decision was 'manifestly erroneous.'" Lynch v. Trek Bicycle Corp., 374 Fed. Appx. 204, 206 (2d Cir. 2010); Amorgianos v. Amtrak, 303 F3d 256, 264-65 (2d Cir. 2002).

## STATEMENT OF THE CASE

A.    The Assault, Parties, and Instant Action

Plaintiff Margaret Betts alleges that on October 19, 2018, while a guest at the Sixty LES hotel, she was sexually assaulted by a massage therapist in her hotel room (A-34-46). She commenced this action against defendants Sixty Lower East Side, LLC, Sixty Hotels, LLC, and Sixty Hotel Manager, LLC (the "hotel defendants"), alleging a single cause of action for negligence, but did not name or seek damages

5

from her assailant, Astakhov, despite later learning his identity (A-34-46). Plaintiff maintains that the hotel defendants breached "their duty to protect [her] from criminal acts" by "[h]iring John Doe to provide massage services to Ms. Betts in her hotel suite without first investigating his certifications or criminal history or otherwise screening John Doe in any way" (A-44-45). Defendants countered that Astakhov's criminal act was unforeseeable and asserted an Article 16 affirmative defense (A-50-55).

At the time of plaintiff's stay, the hotel had an unstaffed spa treatment room on the premises and placed in each guest room a spa menu offering both on-site spa massage services, and private, in-room massage services. A-114, A-120, A-273 to A-274, A-281, A-300. The menu specified that that the Hotel "consult[s] with independent professionals who specialize in mobile spa treatments" for in-room massages. A-124.

At approximately 7:00 p.m. on the date in question, plaintiff called the Hotel's front desk and requested an immediate in-room massage. A-789. There was no discussion of the employment status of the masseuse that would perform it. A-138-40. Hotel staff contacted one of its preferred independent massage therapists, Valeryia Vasilets, but she was unavailable. A-115, A-288, A-701, A-714. Vasilets contacted Iuori Astakhov,[1] whom she had worked with previously, to fill the request.

---

[1] Iuori Astakhov is referred to throughout the record as "Yuri." A-699.

6

A-699 to A-701, A-714. Astakhov agreed and Vasilets referred him to the Hotel. A-714. Astakhov had performed massages at the Hotel before with no complaints. A-115, A-116, A-362, A-700, A-708, A-998, A-1031. Astakhov responded to plaintiff's room later that evening and, during the massage, digitally penetrated her vagina, brushed her pubis, and pinched her nipple. A-34-35, A141-43. Plaintiff checked out of the hotel two days later, returned to her home in Illinois, and notified the Hotel of the assault. A-131, 36, 1131.

In New York, a massage license is issued for life, but licensees must renew it every three years. A-256. Astakhov obtained his license on October 1, 2008, but failed to renew it after it lapsed in November 2013. A-273-76. There was no evidence that Astakhov had a criminal record, had ever been accused of criminal conduct, or that he was unregistered for any reason other than his failure to renew.

B.    The Summary Judgment Motions and Decision

Plaintiff and defendants sought summary judgment. A-60-61, 435-36. The District Court granted plaintiff's motion to the extent of finding that the Hotel Defendants violated New York Education Law § 7802, that such violation constituted negligence *per se*, and that the violation proximately caused the assault. A-1138-73. The District Court denied plaintiff's request for summary judgment on her common law claims.

In finding a violation of § 7802, the District Court found that defendants claimed to be engaged in the practice of massage therapy via the spa menu and found it immaterial that the Hotel used independent contractors to fulfill the requests. A-1160-61. The court also found that defendants violated § 7802's requirement that those performing massage services be "licensed or authorized" given Astakhov's lapsed registration. A-1161-62. As to proximate cause, the court reasoned that "if defendants had verified whether Astakhov was authorized to practice in New York, as is required under Section 7802, they would have learned he was not and thus could not have lawfully permitted Astakhov to perform plaintiff's massage" (A-1162-65, quoted passage at A1165). The District Court clarified that its causation holding "did not turn on" "[whether] Astakhov had a propensity to commit sexual assault" (A-1172 at fn16).

The District Court agreed, however, that "(i) defendants cannot be held liable on a respondent superior theory; (ii) defendants cannot be held liable under a negligent supervision or retention theory; and (iii) there is no common law duty to conduct background checks of employees or independent contractors before engaging them." A-1167-72 [quoted passage at A-1167-68]. Nonetheless, the court denied defendants' motion "*in its entirety*" (A-1172, emphasis added). That this was not the District Court's substantive holding is evident from the foregoing analysis. Moreover, in a later pre-trial decision, the District Court noted that it had previously

8

"found on the undisputed facts that the complaint did not state a negligence claim [against defendants]," and that "absent the Court's finding that the hotel had violated Education Law § 7802, defendants' motion for summary judgment on common law negligence would have been granted" (A-1229). At trial, the court repeated that "[i]t is true that if there wasn't this statute [§7802], that on the basis of the undisputed record, the case would have been dismissed" (A-1339).

Thus, the only liability theory before this Court is that predicated on defendants' purported violation of Education Law § 7802.

C.     The Relevant Pre-Trial and Trial Rulings

The District Court rightly permitted the jury to apportion fault to non-party intentional tortfeasor Astakhov under CPLR 1601 (A-1224-31).

Plaintiff exchanged a witness list omitting her treating physician, Dr. Robert Reff. A-1182. The District Court denied without explanation defendants' request for a missing witness charge based on the failure to call Dr. Reff (A-1273-75).

Plaintiff's witness list indicated that she would call psychiatrist Dr. Steven Fayer at trial. A-1182. After it became apparent she would not do so, defendants moved under FRE 801(d)(2)(C) to read portions of Dr. Fayer's deposition as opposing party statements (A-1320-21). The District Court denied this request (A-1357-58, A-1370-71).

D.     The Trial Evidence and Argument

1.     Plaintiff's Testimony

Plaintiff described her assault by Astakhov as follows:

> During the massage I was laying on my stomach and I fell asleep. And I woke – I was kind of – I was groggy waking up, and I felt the massage therapist's hand come all the way up my thigh and then he brought his finger inside my vagina, and it felt rough, and then took it out and massaged down. The next thing he did is he took his other hand and did the same thing. Afterwards, he finished the massage on – that he was doing as I was on my stomach, and on my back he pinched my nipple. He started massaging my shoulders and he pinched my nipple, and he did – a friend of mine said, I guess, the best example, a drive-by on the top of my pubic region, pubic hair, my vagina. He took his hand and brush brushed it over it.

A-1298-99.

Afterward, plaintiff was anxious and could not sleep or concentrate. A-1300. Upon returning home, she informed Dr. Reff – who had been treating her for anxiety and adult ADHD – about the assault. A-1301. Plaintiff also claims to have suffered from dissociative episodes, nightmares, flashbacks, intrusive thoughts, aversions to being touched, and debilitating anxiety. A-1302, A-1304.

2.     Dr. Joseph Otonichar (Plaintiff's Expert Psychiatrist)

Other than plaintiff herself, the only witness plaintiff called was expert psychiatrist Dr. Joseph Otonichar. Dr. Otonichar acknowledged plaintiff's longstanding history of mental illness and psychiatric care – dating back to her childhood and relating to family dysfunction – as well as prior substance use

10

disorder, anxiety disorder, and depressive symptoms. A-1347, A-1351, A-1369. Dr. Otonichar explained that plaintiff had "a very fragile history in that she came from a very chaotic upbringing and her interpersonal relationships also have been tumultuous." A-1335, A-1351.

Based upon his examination of plaintiff and his review of her treatment records, Dr. Otonichar diagnosed plaintiff with "PTSD, ADHD hyperactivity disorder, major depressive disorder, traits of borderline and dependent personality disorder, substance use disorder, including opioid use disorder and alcohol use disorder, and unspecified anxiety disorder." A-1332-33. He further opined that the sexual assault "contributed to [plaintiff's] symptoms" and that "she experienced symptoms of PTSD as a direct result of the incident…[which] has significantly impaired her functioning and has caused her significant distress." A-1333-34. He observed "a great deal of psychological weaknesses" which rendered plaintiff "vulnerable to the development of symptoms," and that "her symptoms are new and worsened in terms of the insomnia since the incident." A-1364.

Dr. Otonichar relied heavily on Dr. Reff's records in diagnosing plaintiff and could not say whether her symptoms were permanent. A-1366. When he authored his report in March 2024, plaintiff's PTSD was in partial remission. A-1337-38. Dr. Otonichar also acknowledged that he had not reviewed any of Dr. Reff's or Dr.

11

Wilson's (plaintiff's treating addiction specialist) treatment records that were prepared after he issued his report (i.e., at any point after March 1, 2024). A-1348.

3.    Dr. Julie Medlin (Defendants' Expert Psychologist)

Dr. Medlin reviewed plaintiff's medical records (including those from Dr. Reff), met with plaintiff three times, and conducted an in-person psychological examination. A-1448-51. Plaintiff told Dr. Medlin she suffered lifelong trauma from the murder of her four-year-old sister. A-1457-58. She had anxiety, nightmares, and trouble sleeping beginning from a very young age because she was afraid her sister's murderer would return. A-1458. Plaintiff also reported "high-conflict family dynamics," that she was kicked out of boarding school for smoking marijuana, began snorting Ritalin in high school, suffered depression and panic attacks, abused alcohol and cocaine in college, and that she was in a long-term abusive relationship after college. A-1458-59. Plaintiff reported that, as an adult, she suffered bouts of severe depression and anxiety, and that, over her adult life, she had "a lot of different treatment providers, psychiatrists, and therapists, and healers," and was "in and out of different rehab centers." A-1460.

After administering multiple psychological tests, Dr. Medlin diagnosed plaintiff with borderline personality disorder (BPD), which "involves a long-term pattern of instability in interpersonal relationships, [] instability in self-image or

sense of self and identity…mood swings and significant impulsivity."[2] A-1464-65. This diagnosis, a "lifelong disorder," was based on plaintiff's "pattern of unstable and intense interpersonal relationships," her "identity disturbance…impulsivity…a long history of significant debt due to overspending and substance abuse…[and] mood instability," all documented in her treatment records. A-1465-66.

Dr. Medlin did not believe plaintiff's BPD was caused by the assault "because [plaintiff] had those problems for many years before the incident at the hotel and her treatment records that predate the hotel incident by at least two years document all of these problems," and plaintiff herself confirmed that these symptoms and behaviors "began years before the incident at the hotel." A-1467. Dr. Medlin acknowledged the assault could have aggravated plaintiff's symptoms but found this improbable because plaintiff's "behaviors and problems have essentially stayed the same, with the exception of she did have some symptoms of post-traumatic stress immediately following the incident at the hotel." A-1467.

With respect to PTSD, Dr. Medlin testified that plaintiff's pre-assault treatment records show "that she was being treated for a history of trauma and that she had trauma related symptoms, including PTSD symptoms" such as nightmares, insomnia, anxiety, and hypervigilance. A-1469. The records also indicated that

---

[2] Dr. Medlin noted that plaintiff's treating physicians, Dr. Wilson and Dr. Reff, as well as both of her trial experts, Dr. Fayer and Dr. Otonichar, observed symptoms of borderline personality disorder. A-1466.

plaintiff had nightmares about sexual abuse that *predated* the underlying assault. A-1469-70. Dr. Medlin opined that plaintiff over-reported her psychiatric symptoms, but that her testing results do "suggest some symptoms of PTSD and some symptoms of depression." A-1470-71. She agreed that plaintiff "did experience some symptoms of PTSD immediately following the incident at the hotel[,] [b]ut that the symptoms were not severe or chronic enough to meet the criteria for PTSD." A-1476. Notably, "neither of [plaintiff's] treating psychiatrists…diagnosed her with PTSD," despite treating her "both before and after the incident." A-1476.

Dr. Medlin concluded that plaintiff "had a longstanding history of psychological problems before the incident at the hotel, that she did experience some emotional distress and symptoms of PTSD from the incident at the hotel[,] [b]ut that there was no change in her treatment or her diagnosis before and after, with the exception of she was prescribed prazosin for nightmares by Dr. Reff." A-1479.

4.   <u>Plaintiff Counsel's Summation</u>

Plaintiff's counsel conceded that "[t]here's no one denying that [Astakhov] is the one who sexually assaulted [plaintiff]." A-1637 to A-1638. However, over defense counsel's objection, plaintiff's counsel argued that: "This would never have happened if they had properly checked [Astakhov] out. See, if he was licensed. That's the whole case here. That's what the judge decided." A-1638.

14

Counsel told the jury that "[i]t never fails to amaze [him] that when the facts are against [defendants] – it's already been determined that they are the only ones responsible in this case[,][defense counsel is] trying to push it off on somebody [else]." A-1599. Counsel further argued that "[w]hat happened here is the complete responsibility of the hotel…and they should be the one paying the entire verdict, not somebody else….the hotel should be 100 percent responsible. 100 percent. If they would have checked him out beforehand, this would never have happened. No one sued [Astakhov], no one brought him in as a defendant, no one examined him…[plaintiff] has no idea of who he is except the name." A-1638.

Counsel further argued that plaintiff "[did not] find out [Astakhov's] name until two-and-a-half years later when the lawsuit is started…[b]ut now [the defendants] want to bring him in." A-1639. He told the jury that "We're suing the hotel. We're not suing [Astakhov], for obvious reasons." A-1639. He averred that "[defendants] [are] not suing anybody else" but were "try[ing] [to] bring this thing in the back door so [plaintiff] doesn't get 100 percent." A-1639. After this comment Judge Reice Buchwald finally put an end to this line of argument, telling counsel "Okay. Now you're over the line." A-1639.

Undeterred, plaintiff's counsel argued that "looking at the evidence and looking at the judge's decision and looking at everything that's happened…[it was] 100 percent the responsibility of the hotel." A-1640.

5.    The Jury Charges

With respect to Iuori Astakhov and the Hotel's statutory violation, the District

Court charged the jury as follows:

> As you have heard, this case arises from the sexual assault of Ms. Betts at the Sixty Lower East Side hotel during a massage administered by Iuori Astakhov, an independent contractor engaged by the hotel. Astakhov had received a license for massage therapy in 2008. However, his registration had expired in 2013 and was never renewed. Thus, at the time of the assault, he was neither licensed nor authorized to practice massage therapy. The hotel did not verify Astakhov's licensing status prior to hiring him to administer Ms. Betts's massage.
>
> Earlier in this case, the Court ruled, as a matter of law, that the hotel violated a provision of New York State's Education Law when they sent an unlicensed or unauthorized massage therapist to plaintiff's room in response to her request for a massage. This Court also ruled as a matter of law that the hotel's violation of the statute was the proximate cause of the plaintiff's injuries. Apart from the obligations imposed by statute that the hotel was required to ensure that a massage therapist was licensed or authorized in the absence of any prior complaints about any massages performed by Astakhov, the hotel did not have a legal obligation to conduct a background check. You are bound by these prior rulings. Thus, since the Court has already found the hotel liable, you are only to decide what damages, if any, Ms. Betts is entitled to.

A-1654-55.

Regarding damages, the court instructed that plaintiff "is not [] entitled to recover for any physical or psychological ailment or disability which existed prior to the sexual assault or for any injuries which she may now be suffering which were not caused or contributed by the sexual assault on October 19, 2018. The plaintiff can only recover for damages caused by aggravation of the pre-existing condition,

16

not the condition itself. The plaintiff should be compensated only to the extent that you find her condition was made worse by the hotel's negligence." A-1656-57.

Consistent with its pre-trial ruling, the District Court did not give a missing witness charge relating to Dr. Reff.

6.   The Verdict

The jury found defendants and Astakhov equally liable and awarded $2 million in past pain and suffering and $750,000 in future pain and suffering damages (over twenty years). A-1679-80. Judgment was entered on July 22, 2025. A-1697-99.

E.   The Post-Trial Motion and Decision

Defendants moved pursuant to FRCP 59 to: (1) vacate the portion of the court's summary judgment decision finding defendants liable pursuant to section 7802; (2) set aside the jury's irrational 50-50 apportionment as against the weight of the evidence; (3) set aside the jury's damages award as excessive under CPLR 5501(c) and against the weight of the evidence and, (4) for a new trial based on the failure to give a missing witness charge for Dr. Reff and for failing to permit defendants to read Dr. Fayer's deposition testimony (A-1269-70).

The District Court denied defendants' motion in its entirety. SPA-4-36. It adhered to its prior holding that defendants' violation of section 7802 of the Education Law Section 7802 constituted negligence per se (SPA-13-19). As to the

17

verdict, it affirmed the jury's apportionment based on defendants' "decision not to add Astakhov as a third-party defendant." (SPA-20-23). The court affirmed the damages award, but reviewed only defendant's share thereof ($1.375 million), compared it to unreviewed jury verdicts, and disregarded the sexual assault awards reviewed under CPLR 5501(c) furnished by defendants. (SPA-23-27). It also found plaintiff counsel's summation remarks harmless (SPA-27-30).

Finally, the court affirmed its preclusion of Dr. Fayer's deposition testimony because Dr. Fayer was not a party opponent whom plaintiff authorized to make a statement on her behalf under Rule 801(d)(2)(C) (SPA-31-33). It likewise opined a missing witness charge for Dr. Reff was not necessary because defense counsel was permitted to argue in summation that the jury could draw a negative inference from his absence (SPA-33-35).

## ARGUMENT

## POINT I

### THE DISTRICT COURT ERRED IN GRANTING PLAINTIFF SUMMARY JUDGMENT BASED ON DEFENDANTS' PURPORTED VIOLATION OF EDUCATION LAW § 7802

A.    Governing Law

New York Education Law § 7802 provides as follows:

Only a person licensed or authorized pursuant to this chapter shall practice massage therapy and only a person licensed under this article

18

shall use the title "masseur", "masseuse" or "massage therapist". No person, firm, partnership or corporation claiming to be engaged in the practice of massage or massage therapy shall in any manner describe, advertise, or place any advertisement for services as defined in section seventy-eight hundred one of this article unless such services are performed by a person licensed or authorized pursuant to this chapter.…

As distilled by the District Court, "an entity violates Section 7802 if it: (i) claims to be engaged in the practice of massage therapy; (ii) advertises massage therapy services; and (iii) allows for those massage therapy services to be performed by a person who is not 'licensed or authorized' pursuant to New York's Education Law." A-1160.

Defendants' conduct checks none of these boxes, let alone the trifecta required to incur liability under the statute.

B.    Defendants Did Not Claim to be Engaged in Massage Therapy

The District Court found defendants met elements (i) and (ii) based on the spa menu's description of '[t]he SPA at SIXTY LES [as] a 1,200 square foot oasis of renewal and relaxation available exclusively to hotel guests' that is '[t]ucked beneath the lobby of SIXTY LES.'" A-1160-61 [quotation marks and brackets in original]. But this conclusion rests on a conflation of the massage services offered at the hotel's on-site spa (the SPA at SIXTY LES) with the in-room massage services available to guests on request. While both services were advertised in the spa menu, plaintiff never visited the on-site spa and her assault occurred during an in-room massage. As

19

such, that is the only massage service relevant to the § 7802 analysis. Therefore, the question the District Court should have addressed is whether the Hotel claimed to be engaged in *in-room* massage services. Had it done so, the District Court would have had to answer this question in the negative, which would have ended its §7802 inquiry and disposed of this liability theory.

The spa menu specified that in-room massage services were performed by "independent professionals who specialize in mobile spa treatments" (A-676). Rather than 'claim[ing] to be engaged in [in-room] massage services,' the menu *denied* such engagement.[3] Accordingly, the District Court could only find a section 7802 violation by citing the menu's "claims" relating to the on-site spa.[4] This interpretation is unsustainable because it requires a morphing definition of "massage therapy." Settled canons of interpretation require that terms be defined uniformly unless the statute specifies otherwise. See <u>Mashantucket Pequot Tribe v. Connecticut</u>, 913 F.2d 1024, 1030 (2d Cir. 1990) ("It is a settled principle of statutory construction that when the same word or phrase is used in the same section of an act

---

[3] The District Court's conclusion that "Section 7802 does not limit its applicability to only entities that employ massage therapists" (A-1161) is baseless. Read as a whole, § 7802 is clearly designed to govern entities that advertise massage services that they claim to directly provide. Neither plaintiff nor the court cited caselaw to the contrary.

[4] In fact, on-site spa massage were also performed by outside professionals (<u>see</u> A-147-48; A-675-76), but the spa menu simply failed to say so.

more than once, and the meaning is clear as used in one place, it will be construed to have the same meaning in the next place" [citations, quotation marks omitted]).

Here, therefore, a violation can only be found if "massage therapy" has a uniform definition. This means defendants must have claimed to be engaged in in-room massage services, advertised in-room massage services, and allowed the in-room massage services to be performed by someone who was not licensed or authorized. Because the District Court made no such finding, and the facts do not support it, this Court must overturn the grant of summary judgment on plaintiff's § 7802 claim and dismiss this theory altogether.

C.    Astakhov Was Licensed in Compliance with the Statute

Even if defendants violated the first two prongs of section 7802, the District Court nevertheless erred in finding a violation of the final prong, i.e., the prohibition on advertising massage services "unless such services are performed by a person licensed or authorized pursuant to this chapter." Plainly read, this provision requires that the advertised massage services be performed by a licensed massage therapist, or someone who is not licensed but is otherwise authorized to perform massage services. The Education Law defines the latter as those who are "authorized to practice medicine, nursing, osteopathy, physiotherapy, chiropractic, or podiatry" (§7805(1)), "licensed barber[s] or beauty culturist[s]" (§7805(2)), and certain athletic trainers (§7805(4)), among others. See §7805 passim.

The District Court correctly observed that Astakhov obtained his license in massage therapy in 2008 (A-1145), and that "'a license is issued for life'" (A-1157). This should have ended the inquiry because licensure alone satisfies the statute's requirements. Instead, the District Court defined the phrase "licensed *or authorized*" to mean "licensed *and registered*" and found that "defendants violated Section 7802 by allowing Astakhov, an unregistered massage therapist who was not authorized to practice massage therapy in New York, to perform plaintiff's massage" (A1161-62). This construction ignores not only the plain language of section 7802, but the corresponding provisions of the Education Law defining the former's terms.

New York forbids the District Court's redefinition. In Matter of Amorosi v. S. Colonie Ind. Cent. Sch. Dist., 9 N.Y.3d 367, 373 (2007), the Court of Appeals rejected the invitation to "resort to rules of construction or consider the legislative history" of a provision of the Education Law "because the Legislature's intent [was] discernible from the unequivocal language of [the statute]." See also Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999) ("[l]egislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous"); Greenery Rehabilitation Group, Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998) ("[i]f the statutory terms are unambiguous, [the Court's] review generally ends and the statute is construed according to the plain meaning of its words"). Because

22

section 7802 requires only that a massage therapist be "licensed or authorized" and Astakhov had a lifelong license, defendants complied with the statute.

Furthermore, it is immaterial that his license had lapsed. Giving all words full meaning and effect precludes construing the disjunctive phrase "licensed *or* authorized" to mean the conjunctive "licensed *and* authorized" and likewise precludes rewriting the statute to mean "licensed *and registered*." If the legislature intended to use the word "registered" in section 7802, it would have done so. Indeed, the legislature elsewhere imposed registration requirements for massage therapists. Section 7807 prohibits the licensed *but unregistered* practice of massage therapy, providing that "[e]ach massage therapist licensed pursuant to this article [is] required to register triennially with the department to practice in the state," and "shall not practice until they have met such [registration] requirements, and they have been issued a registration certificate." This lays bare the District Court's error of redefining "authorized" to mean "registered." See Matter of DeNigris v. Smithtown Cent. Sch. Dist., 217 A.D.3d 95, 100 (App. Div. 2023) ("The maxim *expressio unius est exclusio alterius* applie[s] in the construction of the statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded").

Magnifying this error, the District Court knew of section 7807 (which plaintiff neither pleaded nor raised on summary judgment) but misconstrued its relation to 7802, opining "it is simply inconceivable that Section 7802 is intended to create a new exception for unregistered massage therapists, whose practice in New York is explicitly banned under Section 7807 and would qualify as a felony." A-1162. Reiterating this holding in its post-trial decision, the court added that "Section 7802 cannot be read to render meaningless the registration requirement in Section 7807." SPA-16 at fn19. By isolating section 7802 from related provisions of the Education Law,[5] the court found an inconsistency where none exists.

The court overlooked that sections 7802 and 7807 (and the remaining provisions of Article 155) are statutes in *pari materia*, which "are to be construed together and as intended to fit into existing laws on the same subject unless a different purpose is clearly shown." Lower Manhattan Loft Tenants v. NY City Loft Bd., 66 N.Y.2d 298, 304 (1985). While section 7802 provides that only those "licensed or authorized" can practice massage therapy, it is not (nor does it purport to be) exhaustive. Section 7802 merely establishes *some* requirements for the practice of massage therapy and other sections (including section 7807) specify the rest. In other words, section 7802 requires licensure for some massage therapists,

---

[5] The District Court made this error despite recognizing that "[t]he New York laws governing the profession of massage therapy are provided in New York's Education Law at Title 8, Article 155, which spans §§ 7800-7807" (A-1156).

while section 7807 imposes registration and continuing education requirements on those licensees.

Section 7802 does not "render meaningless" the registration requirements of 7807 (SPA-15 at fn19). Indeed, it does not speak to the registration requirements of section 7807 at all – a licensed but unregistered massage therapist complies with section 7802 while violating section 7807. The District Court invades the legislative province by importing the strictures of Section 7807 into Section 7802.[6] The undue prejudice conferred on defendants by this approach is self-evident: plaintiff's negligence *per se* claim based on a single Education Law provision becomes an amorphous liability theory predicated on multiple unpled statutory provisions.

This alone requires reversal of the District Court's summary judgment decision and dismissal of the complaint.

D.    The District Court Erred in Making "New Law"
      To Find The Hotel Defendants Negligent *Per Se*

1.    Negligence *Per Se*

"Under the rule of negligence *per se,* if a statute is designed to protect a class of persons, in which the plaintiff is included, from the type of harm which in fact

---

[6] Plaintiff also argued that she was entitled to summary judgment on the grounds that defendants violated New York Education Law § 6512(2), but the District Court correctly denied this motion, finding "no evidence that defendants knew that Astakhov or any of the other massage therapists it used were not authorized to practice massage therapy in New York," as required by the statute. A-1166-67.

occurred as a result of its violation, the issues of the defendant's duty of care to the plaintiff and the defendant's breach of that duty are conclusively established upon proof that the statute was violated." German v. Fed. Home Loan Mtge. Corp., 896 F.Supp. 1385, 1396 (S.D.N.Y. 1995) (applying New York law).

However, "[v]iolation of a statute…does not automatically constitute negligence *per se*" and "[o]nly statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence *per se* for violation of the statute." Id. "Three factors are of central importance in this inquiry: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted, (2) whether a finding of negligence *per se* for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme." Id. at 1397 (citation omitted). In addition, "a causal relation between the violation and the harm to the plaintiff [must] be established." Id. at 1396.[7]

2. The District Court's Negligence *Per Se* Lawmaking

In a striking moment of candor, the District Court acknowledged that it "made law" by holding that a violation of §7802 constitutes negligence *per se*. A-1319 ["I made law"].[8] This was erroneous because, as the court's self-professed lawmaking

---

[7] The issue of proximate cause is addressed below.

[8] Plaintiff, of course, effusively thanked the court for doing so. A-1685.

suggests, Section 7802 is a general licensing statute, which is not "designed to protect a definite class of persons from a *particular* hazard." German, *supra.* New York law holds that violation of general licensing statutes, without more, does not constitute negligence *per se* because a licensing requirement alone does not establish a standard of care. See Dalal v. City of NY, 262 A.D.2d 596, 598 (App. Div. 1999); Dance v. Southampton, 95 A.D.2d 442, 446 (App. Div. 1983).

Defendants cited the court's admission in their post-trial motion to demonstrate that it did not apply, but departed from, the controlling law. In another candid moment, however, the court rationalized its venture by insisting that had it rejected plaintiff's negligence *per se* theory, it would have revisited her common-law negligence claim and "with some confidence…held defendants liable" (SPA-17). In the mind of the District Court, therefore, defendants' liability was preordained.

One of the many problems with this holding, of course, is that the District Court had already rejected plaintiff's common law negligence theory. A-1171-72. In no uncertain terms, it "found on the undisputed facts that the complaint did not state a negligence claim [against defendants]," and concluded "absent the Court's finding that the hotel had violated Education Law § 7802, defendants' motion for summary judgment on common law negligence would have been granted." A-1229. At trial, the court repeated that "if there wasn't this statute [§7802]…the case would have

27

been dismissed." A-1339. The District Court's pre-trial and post-trial statements are irreconcilable.

Curiously, the post-trial decision cites <u>Dance</u> to support the District Court's finding that section 7802 creates a duty, which defendants supposedly breached. <u>See</u> SPA-16-17. But the District Court misreads <u>Dance</u>, which specifically provides (albeit in the context of motor vehicle licensure) that "[a]lmost universally, licensing statutes are not regarded as creating a duty…[because] licensing statutes do not establish standards of care under which drivers must perform certain acts in relation to other drivers in any prescribed fashion." <u>Id.</u> at 447. The <u>Dance</u> court explained that "[t]he rejection of licensing statutes as standards of care emanates from reasoned policy judgments which recognize that while unlicensed drivers may be incompetent in particular cases, the possibility of exceptions is significant enough to justify a case-by-case determination of negligence without the automatic imposition of negligence under the negligence per se doctrine ." <u>Id.</u>

The District Court's finding also conflicts with the only two New York state court decisions addressing whether a violation of section 7802 constitutes negligence *per se*. Both answered in the negative. First, in <u>Doe v. Spa</u>, 2003 NYLJ LEXIS 974 (N.Y. Sup. Ct. 2003), the court determined that "[a]n examination of [Section 7802] does not demonstrate that [it] [was] enacted to protect a specific class of people who are unable to protect themselves," but was "designed for the protection of the general

public." Id. at 4. The court added that "legislative intent to impose liability without regard to fault is not evidence." Id. Accordingly, the defendant "[was] not absolutely liable based upon its employ of an unlicensed massage therapist." Id. Second, in Revercomb v. Aire Ancient Baths S.L., 2019 N.Y. Misc. LEXIS 1567 (N.Y. Sup. Ct. 2019), the court held that the "defendants' advertisement of the services of an unlicensed massage therapist [] does not constitute negligence *per se* as the statute does not set forth a specific standard of care for such services or relate to the manner of practicing massage therapy, and plaintiff cites no authority to support this claim…" Id. at 17.

The District Court dismissed Spa and Revercomb, accusing defendants of treating these controlling cases like "'get out of jail free' cards", and claiming incorrectly that "they are contradicted by other New York cases" (SPA-16). Moreover, while disregarding Spa and Revercomb as "non-binding decisions," the District Court curiously relied on Dillon v. Kim, 158 Misc.2d 711, 717 (Sup. Ct. Nassau Cnty., 1993), which like Spa and Revercomb, is a Supreme Court decision (and therefore equally 'non-binding'). But unlike Spa and Revercomb, Dillon does not even address the question of whether a violation of section 7802 is negligence *per se*, let alone answer in the affirmative.[9]

---

[9] In addition to Dillon, the District Court also cited Ezagui v. Dow Chemical Corp., 598 F.2d 727, 733 (2d Cir. 1979) as supposed support for its holding, with a parenthetical claiming that this case "[found] that a violation of the New York Education Law can constitute negligence *per se"* (SPA-

29

This Court should overturn the District Court's negligence *per se* finding because it defies New York decisions holding that a section 7802 violation specifically, and the violation of a general licensing statute more broadly, do not constitute negligence *per se*. This Court "strongly prefer[s] that the controlling interpretation of a state statute be given by the state, rather than federal, courts." Article 13 LLC v. Ponce de Leon Fed. Bank, 132 F.4th 586, 592 (2d Cir. 2025) (citation, quotation marks omitted, cleaned up). Adherence to this principle requires vacatur of the District Court's negligence *per se* finding.

E.    The District Court's Proximate Cause Finding Is Unsustainable

According to the District Court, "there [was] no question that defendants' violation of the statute was the proximate cause of the plaintiff's injury" (A-1164, citation and quotation omitted).[10] This conflates proximate cause with but-for cause and excludes the foundational element of foreseeability from the analysis.

The court held that "if defendants had verified whether Astakhov was authorized to practice in New York, as is required under Section 7802, they would have learned he was not and thus could not have lawfully permitted Astakhov to

---

17). But Ezagui concerned an entirely different and discrete section of the education law, §6815, regarding the adulterating, misbranding, and substituting of pharmacy drugs, rendering Ezagui irrelevant to the instant matter. As the District Court itself acknowledged, "[t]he New York laws governing the profession of massage therapy are provided in New York's Education Law at Title 8, Article 155, which spans §§ 7800-7807" (A-1156), and plainly do not include §6815.

[10] The court reiterated this holding in its post-trial decision, without providing any further explication. See SPA-18-19.

perform plaintiff's massage" (A-1165). This is a "but-for," i.e., cause-in-fact, causation theory, which is distinct from the proximate cause finding necessary to establish liability.[11] The former describes "'[a] cause without which the event could not have occurred.'" Burlington Ins. Co. v. NYC Tr. Auth., 29 N.Y.3d 313, 321 (2017) (quoting Black's Law Dictionary [10th ed 2014]); see also United States v. Goodrich, 12 F.4th 219, 229 (2d Cir. 2021) (explaining that a but-for cause [i.e., a cause in fact] is one that is a "a necessary factor in bringing about the victim's harm"). "Stated differently…all 'but for' causes bear some connection to the outcome even if all do not lead to legal liability." See also Benaquista v Mun. Hous. Auth., 212 AD2d 860, 861 (App. Div. 1995) ("It is true that, but for the malfunction of the intercom system, plaintiff would have had no reason to leave her apartment and, at least on this occasion, would not have fallen down the stairs. Such a 'but for' rule is, however, inconsistent with accepted substantive rules of tort law because it would permit a finding of causation when defendant's act merely furnished the condition or occasion upon which plaintiff's injuries were received but did not put in motion the agency by which the injuries were inflicted") (internal quotations omitted).

---

[11] The District Court implicitly acknowledged that its liability finding rested on a 'but-for' theory of causation in the post-trial decision, distinguishing certain cases (cited in support of defendants' apportionment argument) by explaining that, unlike the defendant here, "in neither [of those] case[s] was the defendant the 'but-for' cause of plaintiff's injuries" (SPA-23).

By contrast, "[t]he concept of proximate cause, or more appropriately legal cause, has proven to be an elusive one, incapable of being precisely defined to cover all situations." Derdiarian v. Felix Contr. Corp., 51 N.Y.2d 308, 314 (1980). Proximate cause does not have a singular definition "because the concept stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct." Id. (internal citations omitted). As such, "[p]roximate cause is, at its core, a uniquely fact-specific determination," which depends upon a variety of factors, often most significantly 'that of foreseeability.'" Hain v. Jamison, 28 N.Y.3d 524, 530 (N.Y. 2016).

"[P]roximate cause will be found lacking where the original negligent act merely furnished the occasion for—but did not cause—an unrelated act to cause injuries not ordinarily anticipated." Id. (citation and quotation marks omitted). It is well-settled that "[w]here the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." Derdiarian, 51 N.Y.2d at 315. "An intervening act may break the causal nexus when it is 'extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct.'"

Maheshwari v. City of New York, 2 N.Y.3d 288, 295 (2004) quoting Derdiarian, *supra.*

Here, defendants' supposed violation of section 7802 merely furnished the occasion for plaintiff's assault, which was plainly unforeseeable to defendants. The District Court erred in failing to consider the specific facts as it related to the defendants and the third-party vendor Astakhov. Instead, it held that "given the licensing and registration requirements set forth in Article 155 are specifically intended, at least in part, to prevent sexual misconduct, it was reasonably foreseeable that plaintiff's assault could result from permitting an individual who was not authorized to practice in New York to perform her massage" (A-1165).[12]

But this holding cannot stand, since it essentially (and incorrectly) holds that a negligence *per se* finding itself suffices to establish proximate cause, without need of further inquiry. This is wrong, as a statutory violation alone cannot establish proximate cause. See e.g., German, 896 F.Supp.at 1396 ("[a]lthough the effect of the [negligence *per se*] rule is to stamp the defendant's conduct as 'negligence,' the causal relation between the violation and the harm to the plaintiff remains to be

---

[12] It is notable that, in so finding, the District Court cited a single 26-year-old trial-level decision, Vaneria v. Consolidated Edison Co., No. 120968/97, 1999 WL 292644, at *3 (Sup. Ct., N.Y. Cnty. Feb. 10, 1999), a case that has absolutely no factual similarity and zero bearing on the instant matter. Indeed, Vaneria concerned an individual who was electrocuted while using a public payphone, and rather than contest liability, the defendant Con Ed "admitted that [its] negligence was the proximate cause of plaintiff's injuries." Id. at *1, *3. Vaneria does not even address the distinction between but-for and proximate cause, let alone support the District Court's view that the statutory violation here establishes proximate cause by default.

established...[i]f the violation had no direct bearing on the injury, however, proof of the violation is irrelevant") and 1397 ("[u]nder a negligence *per se* regime, the statute creates the duty and the violation establishes the breach…[after proving a statutory violation], [a]ll that remains to be proved in a negligence action are causation and damages"); <u>see also</u> <u>Dance</u>, 95 A.D.2d at 447 ("it is often stated that a violation, such as driving without a license, is not the proximate cause of the injury").

As such, the relevant inquiry is not whether an assault by an unregistered masseuse is foreseeable in the abstract, but whether an assault by this particular masseuse, Astakhov, was foreseeable to the defendants under the circumstances. This, the District Court explicitly failed to consider. <u>See</u> A-1172 at fn16 (explaining that its proximate cause finding "did not turn on" "[whether] Astakhov had a propensity to commit sexual assault"). Central to this analysis, that is, the analysis the District Court *should have* done, is the fact that Astakhov was not, as far as the hotel was concerned, an unknown quantity. Notwithstanding his lapsed registration,[13] there is no dispute that the Hotel had previously utilized Astakhov's services and had never received a complaint about him. (A-1145). There is likewise no dispute that, at the time of plaintiff's assault, there was no evidence Astakhov had

---

[13] It bears mentioning that Astakhov's registration lapsed because it "expired...and was never renewed" (A-1145). There is no evidence it was revoked for illicit conduct or other cause.

a criminal record or that he had ever been accused of criminal conduct (and thus no reason for the hotel to know or have any suspicion about his proclivities). A-1145.

Given that the Hotel had no reason to believe that Astakhov posed any risk to its guests, the assault on plaintiff was plainly unforeseeable. This comports with New York decisions assessing the foreseeability of intentional torts by third parties. See, e.g., Shor v. Touch-N-Go Farms, Inc., 89 A.D.3d 830, 831 (App. Div. 2011) ("it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury"); Timothy Mc. v. Beacon City Sch. Dist., 127 A.D.3d 826, 828 (App. Div. 2015) ("Where the complaint alleges negligent supervision due to injuries related to an individual's intentional acts, the plaintiff generally must demonstrate that the school knew or should have known of the individual's propensity to engage in such conduct, such that the individual's acts could be anticipated or were foreseeable"); Kranenberg v. TKRS Pub, Inc., 99 A.D.3d 767 (App. Div. 2012) ("the defendants established that they had no previous knowledge of the subject customer's propensity to assault the plaintiff or of any prior similar incidents in the bar which would make the incident reasonably predictable"); Mathis v. Board of Educ., 126 A.D.3d 951, 952 (App. Div. 2015) ("[a]ctual or constructive notice to the school of prior similar conduct generally is required").

At the very least, the District Court should left the question of proximate cause to the jury, as it is well-settled that both "foreseeability and proximate cause are

generally questions for the factfinder" and proximate cause can only "be determined as a matter of law [when] only one conclusion may be drawn from the established facts." <u>Hain</u>, 28 N.Y.3d at 529-30 (citation and quotation marks omitted). While defendants submit that the only sustainable conclusion is that the attack was unforeseeable, a contrary finding should have been rendered by the jury, not the District Court.

<b><u>POINT II</u></b>

<b>THIS COURT SHOULD MODIFY THE JURY'S<br><u>IRRATIONAL APPORTIONMENT OF FAULT</u></b>

The jury's decision to apportion equal shares of liability to defendants and Astakhov, is irrational and requires modification. It is well settled that the liability of a non-negligent and vicariously liable (or, at most, passively negligent) premises owner cannot match that of an international criminal tortfeasor. <u>See</u> <u>Roseboro v. N.Y. City Trans. Auth.</u>, 10 A.D.3d 524 (N.Y. App. Div. 2004); <u>Stevens v. N.Y. City Trans. Auth.</u>, 19 A.D.3d 583 (N.Y. App. Div. 2005).

In <u>Roseboro</u>, the decedent was robbed and thrown onto subway tracks by non-party assailants, where he was then struck by a train. <u>Roseboro</u>, 10 A.D.3d at 525. At the time, a token booth clerk employed by defendant Transit Authority was asleep at his post, while the entirety of the assault was captured on a security monitor in front of him. <u>Id.</u> at 525. The jury apportioned only 20% fault to the non-party intentional tortfeasors, with the remainder of liability, 80%, assigned to the negligent

36

defendant. Id. Thereafter, the Appellate Division, First Department held that the "defendant's share of the responsibility cannot approach the degree of culpability of decedent's attackers," who engaged in a particularly "heinous crime," and modified the apportionment to hold the non-party assailants 80% liable and the negligent defendant 20% liable. Id. at 526.

Similarly, in Stevens, the decedent was pushed onto subway tracks by a non-party intentional tortfeasor and killed by an oncoming train that could not stop in time. Stevens, 19 A.D.3d at 584. The jury initially apportioned 40% of the fault to the defendant Transit Authority, with the remaining 60% falling to the intentional tortfeasor. Id. The Appellate Division increased the tortfeasor's share to 80%, holding "[a]ny negligence by the train operator cannot approach the culpability of the perpetrator." Id. at 584-85.

The instant facts more decisively compel modification. Unlike the above cases, there is no evidence that defendants knew or should have known of Astakhov's propensity for sexual violence, meaning the reasoning of Roseboro and Stevens applies with even greater force here.[14] At trial, plaintiff did not even attempt to present any evidence of such knowledge (no doubt because such evidence does not

---

[14] There is no rational basis for the District Court's gratuitous comment that "even an award that apportioned greater responsibility to the Hotel would have been reasonable" (SPA-22, underline in original).

exist).[15] Instead, plaintiff's counsel made his case via improper and highly-prejudicial summation comments in which he alleged that defendants were illicitly trying to blame Astakhov to obtain a discount on the compensation they owed plaintiff, as if invoking CPLR 1601 were improper or some sort of moral crime. A-1599, A-1638-40. Particularly egregious was counsel's statement that "we're not suing [Astakhov], for obvious reasons" but that the Hotel was "try[ing] [to] bring this thing in the back door so [plaintiff] doesn't get 100 percent." A-1639. Although the District Court found this comment was "over the line,"[16] plaintiff's counsel was undeterred and continued to improperly suggest that the court had already resolved the issue of apportionment, stating "looking at the evidence and looking at the

---

[15] Of the several representatives that were deposed on behalf of defendants, none were aware of any prior complaints regarding massage therapists at the Hotel, including Astakhov, nor of any other similar criminal conduct on the premises. A-115, A-116, A-379, A-521, A-700, A-708, A-782, A-866, A-952, A-998, A-1031. The record further supports that the hotel had used Astakhov's services previously with no complaints or any instances of misconduct. A-115, A-116, A-362, A-700, A-708, A-998, A-1031. Further, there is no evidence that Astakhov had a criminal record or had been accused of criminal conduct at the time of plaintiff's massage. Finally, his registration lapsed not because it "expired...and was never renewed" (A-1145), with no evidence it was revoked for cause or illicit conduct.

[16] Still, the District Court apparently shared plaintiff counsel's belief that a greater apportionment was owed to the defendants merely because Astakhov was not named as a direct defendant (SPA-21 ["The Hotel's effort to avoid responsibility and shift virtually all responsibility to Astakhov through a post-trial motion must be viewed in the context of its decision not to add Astakhov as a third-party defendant, even after his identity was determined"]).  This is wrong, since it is the evidence concerning fault, and not the status of party or non-party, that governs the irrationality analysis. Moreover, The District Court and plaintiff's counsel alike ignore that plaintiff did not name Astakhov as a direct defendant. While plaintiff's failure to do so is understandable (defendants have deeper pockets than Astakhov), the District Court's opinion on the matter is more perplexing.

judge's decision and looking at everything that's happened, …[it was] 100 percent the responsibility of the hotel." A-1640. Despite plaintiff's counsel's blatant disregard for the court's trial rulings – and his repeated efforts to present arguments to the jury that had already been precluded – the District Court found that "there was no prejudice from plaintiff's counsel's comments," because the court sustained the objections and had, previously, given a curative instruction.[17] A-1724, n. 23. Such instructions, however, did not un-ring the bell of counsel's inflammatory remarks, and the equal apportionment of fault between defendants and Astakhov itself proves the jury was poisoned by counsel's summation.

Accordingly, this Court should modify the jury's irrational apportionment award and reduce defendants' share of liability to a fractional amount or, in the alternative, order a new trial on apportionment.

---

[17] The District Court also accused defendants of attempting to "avoid responsibility," because they did not implead Astakhov as a third-party defendant and "benefitted from the apportionment charge." A-1761. Setting aside that it remains "the plaintiff's duty to the court to bring in all parties necessary to a complete determination," Clark v. Flinn & Co., 230 A.D. 698, 699 (N.Y. App. Div. 1930), defendants' decisions of litigation strategy cannot render rational an irrational apportionment.

## POINT III

## THE JURY'S AWARD IS EXCESSIVE UNDER CPLR 5501(C)

A.   Applicable Law: CPLR 5501(c)

*Remittitur* is "the process by which a court compels a plaintiff to choose between a reduction of an excessive verdict and a new trial." Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1328 (2d Cir. 1990). Motions for *remittitur* are made pursuant to Rule 59(a), the denial of which is reviewed under an abuse of discretion standard. In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 112, n. 34 (2d. Cir. 2013); Stampf v. Long Island R.R., 761 F.3d 192, 204 (2d Cir. 2014)("[W]e review a District Court's denial of *remittitur* for abuse of discretion.")

A federal court sitting in diversity applies federal procedural rules and the forum state's substantive law. Gasparini v. Center for Humanities, Inc., 518 U.S. 415, 426-27 (1996) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 [1938]). In New York, CPLR 5501(c) is substantive law and controls a federal court's review of a jury award stemming from New York substantive claims. Id. at 439; Alessi Equip., Inc. v. Am. Piledriving Equip., Inc., 2025 U.S. App. LEXIS 30500, *9 (2d Cir. Nov. 21, 2025) ("Where, as here, damages are issued based on state-law claims, a District Court must review the award under state law to determine whether *remittitur* is warranted."). Pursuant to CPLR 5501(c), a damages award must be modified if it "deviates materially from what would be reasonable compensation." CPLR 5501(c).

40

Determining whether an award "deviates materially" entails comparing it with appellate-reviewed awards for comparable injuries. Boateng v. BMW of N. Am., LLC, 2025 U.S. App. LEXIS 29455, **13-14 (2d Cir. 2025); see also Donlon v. City of New York, 284 A.D.2d 13, 14 (N.Y. App. Div. 2001) ("CPLR 5501[c] requires that [the reviewing court] look to similar appealed verdicts and exercise our judgment to promote greater stability in the tort system and greater fairness for similarly situated defendants.") In performing such analysis, "a court must identify relevant factual similarities between cases and apply its own reasoned judgment." Gonzalez v. United States, 80 F.4th 183, 199 (2d Cir. 2023) (internal citations omitted). The "deviates materially" standard called for by CPLR 5501(c) "requires closer court review than the common-law 'shock the conscience test.'" Id. at 194.

B.    *Remittitur* of the Jury's Pain and Suffering Award is Necessary

The jury's $2.75 million pain and suffering deviates materially from non-pecuniary compensatory awards approved by New York appellate courts for comparable sexual assaults. The District Court's first error was in its definition of the award, which it determined was "$1 million in past and $375,000 in future damages." A-1706. While $1.375 million represents the defendants' equitable share of the verdict, CPLR 5501(c) requires review of the aggregate award and, accordingly, neither New York nor federal courts consider apportionment when

41

conducting review under the statute. The District Court's methodology compares apples to oranges.[18]

The District Court's second error was its failure to distinguish jury verdicts from awards reviewed under CPLR 5501(c). A-1727 ("In almost all instances, the jury awarded six or seven figures in damages."). The starkest example of this is footnote 25, wherein it misconstrues defendant's argument to be "that other verdicts are dispositive of this one." Defendant's actual position is that awards reviewed under the statute, not verdicts, control the analysis and, indeed, this view finds vindication in New York appellate jurisprudence. See Donlon, supra at 14 ("[CPLR 5501(c)] requires that we look to similar appealed verdicts"). The District Court's reliance on unreviewed awards is thus irreconcilable with the statute and controlling precedent.

Illustrative of this error is the District Court's exaltation of Carroll v. Trump, 683 F. Supp. 3d 302, 327 (S.D.N.Y. 2023), aff'd, 124 F.4th 140 (2d Cir. 2024). As defendants observed, the Carroll trial court likewise made the mistake of relying on unreviewed verdicts in affirming the $2 million compensatory award, specifically the $7.5 million verdict in Breest v. Haggis, No. 161137/2017, 2023 WL 374404

---

[18] The perverse result of this methodology is that the likelihood of obtaining *remittitur* is proportional to a defendant's culpability (the more culpable, the more likely to get a reduction). This also raises the vexing question of what the proper remedy should be when multiple defendants bearing uneven shares of fault appeal from the same award. Only by excluding apportionment from its review can a court avoid this quandary.

(N.Y. Sup. Ct., N.Y. Cty. 2023) and the $12 million pain and suffering verdict in

<u>Egan v. Gordon</u>, No. 904231-20 (N.Y. Sup. Ct., Albany Cty., Nov. 10, 2022). Neither

was appealed or reviewed under CPLR 5501(c), rendering both devoid of

precedential impact.[19] The only controlling authority cited in the <u>Carroll</u> court's

decision is <u>Ortiz v. N.Y. City Hous. Auth.</u>, 22 F. Supp. 2d 15, 38 (E.D.N.Y. 1998),

<u>aff'd</u>, 198 F.3d 234 (2d Cir. 1999), which affirmed the jury's $3 million pain and

suffering award under 5501(c) for a 47-year-old plaintiff who suffered PTSD and

other psychological dysfunction after being raped at gunpoint. In other words,

<u>Carroll</u> is based on a single quarter-century old decision involving far worse sexual

wrongdoing, not the comparative case analysis that the statute mandates.

Given the infirmity of the <u>Carroll</u> trial court's analysis, this Court should

exclude this decision from its review of the award here. Even if it does not, <u>Carroll</u>

does not sustain affirmance because, as defendants detailed below, it involves a more

vicious assault. It bears repeating that the District Court's comparison of the

apportioned award here ($1.375 million) with the unapportioned award in <u>Carroll</u>

($2 million) confounds its analysis – despite its ostensible intent to approve a lower

---

[19] Moreover, the facts of these cases are incomparable. Ms. Breest was orally and vaginally raped and Ms. Egan endured years of sexual abuse as a child by her former brother-in-law, including forced oral sex and sexual intercourse. Yet, <u>Breest</u>, <u>Egan</u>, and <u>Carroll</u> are the only decisions plaintiff tendered in defense of the verdict.

award for a less severe assault, the court affirmed an award 37% greater than that of Carroll.

Even if the Court deems Carroll a suitable comparator, fidelity to CPLR 5501(c) requires a survey of appellate-reviewed awards for comparable wrongdoing, not a myopic fixation on a single decision. See, e.g., Ortiz, supra (reviewing six awards for rape victims approved within the preceding ten years).[20] The cases defendants marshaled below confirm that the Carroll award is an anomaly among the landscape of New York awards for similar sexual wrongdoing, which occupy the five-to-low-seven-figure range, even for younger plaintiffs that suffered worse assaults. See, e.g., Camacho v. Rochester City Sch. Dist., 20 A.D.3d 916 (N.Y. App. Div. 2005) (additur of the pain and suffering award to $75,000 for a minor plaintiff who was sexually assaulted by another student while a passenger on a school bus); Schneider v. National R.R. Passenger Corp., 987 F.2d 132 (2d Cir. 1993) (affirming jury verdict of approximately $1 million in intangible damages to a plaintiff who was brutally attacked for two hours at knife point, robbed, and driven to an unknown

---

[20] See Kukla v. Syfus Leasing Corp., 928 F. Supp. 1328 (S.D.N.Y. 1996) (upholding award of $ 1.35 million for rape in hotel); Splawn v. Lextaj Corp., 197 A.D.2d 479 (1st Dep't 1993) (upholding award of $ 2 million for rape in hotel); Schneider v. National R.R. Passenger Corp., 987 F.2d 132 (2d Cir. 1993) (upholding award of $ 1.75 million for a woman who was robbed and subjected to attempted rape); Pantages v. L.G. Airport Hotel Assocs., 187 A.D.2d 273 (1st Dep't 1992) (upholding award of $ 1.875 million for rape and sodomy in hotel); Carole A. v. City of New York, 169 A.D.2d 800 (2d Dep't 1991) (upholding verdict of $ 1,075,000 for rape of school psychologist); Haddock v. City of New York, 140 A.D.2d 91 (1st Dep't 1988), aff'd 75 N.Y.2d 478 (1990) (upholding verdict of $ 2.5 million for rape of child in New York City playground).

location where her assailant attempted to rape her, resulting in PTSD, mild organic brain syndrome, and the need for three surgeries).

New York courts rarely permit awards over six figures, even for more heinous sex crimes. For instance, in Feldman v. Knack, 170 A.D.3d 667 (N.Y. App. Div. 2019), the Appellate Division affirmed $450,000 in pain and suffering ($250,000 past / $200,000 future) for a plaintiff who was raped by her psychotherapist in his office during a therapy session. In Perney v. Medical One N.Y., P.C., the trial court – during an inquest on the issue of damages due to the defendants' failure to appear – awarded $100,000 ($75,000 past / $25,000 future) to a plaintiff who was sexually assaulted by a nurse/technician while sedated at his physician's office. Perney, 2021 N.Y. Misc. LEXIS 644. See also Laurie Marie M. v. Jeffrey T.M., 159 A.D.2d 52 (N.Y. App. Div. 1990) (remittitur[21] of jury's compensatory award from $200,000 to $100,000 for a minor plaintiff who was repeatedly sexually assaulted by her stepfather for several years.).

In this Circuit, six and seven-figure compensatory awards are reserved almost exclusively for the most depraved sexual acts, typically involving rape procured by

---

[21] The Appellate Division's *remittitur* of the award in that case demarcates the upper bound of the sustainable range for such awards in comparable cases. See Siegel's New York Practice § 407, "Additur and Remittitur" [Third Edition], p. 658 ("The figure set by the court, and the one to which the party is required to stipulate or face a new trial, represents the minimum (in the case of additur) or the maximum (in the case of remittitur) found by the court to be permissible on the facts."). In other words, the highest permissible award for the repeated sexual assault of a minor stepchild is a six-figure amount. This confirms the excessiveness of the jury's award.

drugging or coercion by government agents.[22] See, e.g., Doe v. Warren, 2024 U.S. Dist. LEXIS 106767, *28-29 (S.D.N.Y. 2024) (approving $500,000 compensatory and punitive awards against defendants who drugged and raped minor girl after luring her to apartment with promise of advancing her modeling career); Mathie v. Fries, 121 F.3d 808, 812 (2d Cir. 1997) (affirming $250,000 in compensatory damages for plaintiff inmate who was sexually assaulted and raped on multiple occasions by a prison sergeant, suffering "intense and pervasive emotional distress" resulting in "post-traumatic stress disorder, with accompanying symptomatology including depression, anxiety, fear, and disturbed sleep."); Doe v. Hyassat, 2024 U.S. Dist. LEXIS 67482 (S.D.N.Y. 2024) (awarding $1,250,000 in compensatory damages alongside equal punitive award where the defendant invited plaintiff to dinner under the guise of a professional meeting, made unprompted sexually-charged comments, drugged plaintiff with a synthetic "date-rape" drug, raped her in his home, physically assaulted her when she attempted to leave, and infected her with sexually transmitted diseases.); Noonan v. Becker, 2018 U.S. Dist. LEXIS 60704 (S.D.N.Y. 2018) (approving $1,013,000 in compensatory damages to plaintiff who was physically assaulted, drugged, and raped by a police officer who arrested

---

[22] Notably, Carroll stands as the highest of these awards despite involving a far less grievous assault, buttressing defendant's contention that its outlier status is the product of the trial court's comparison with unreviewed verdicts for far more severe sexual wrongdoing. Affirmance here would only compound this incongruity.

her and later coerced her to meet with him using threats of violence and promises of withdrawing criminal charges); <u>Doe v. Alsaud</u>, 2017 U.S. Dist. LEXIS 167359 (S.D.N.Y. 2017) (awarding $1,250,000 in pain and suffering [$850,000 past / $400,000 future] to plaintiff who was drugged, held against her will, and repeatedly raped by an intruder in her hotel room); <u>Villalta v. JS Barkats</u>, *PLLC*, 2021 U.S. LEXIS 75071 (S.D.N.Y. 2021) (following an inquest, the court awarded $350,000 in damages for emotional harm to a plaintiff who was regularly raped and sexually harassed by her boss while on the job).

Accordingly, the Court should order a *remittitur* of the jury's award to an amount that conforms with the foregoing jurisprudence.

## **POINT IV**

### **THE DISTRICT COURT'S ERRONEOUS EVIDENTIARY RULINGS REQUIRE A NEW TRIAL**

A.     The District Court Should Have Given a Missing Witness Charge For Plaintiff's Failure to Call Her Treating Psychiatrist

It is elementary that "a missing witness charge is warranted for the failure to call a treating physician as a witness at trial, unless the party opposing the inference shows that the witness is either unavailable, not under his control, or that the witnesses' testimony would be cumulative." <u>Dayanim v. Unis</u>, 171 A.D.2d 579, 580

47

(N.Y. App. Div. 1991); see also United States v. Caccia, 122 F.3d 136, 138 (2nd Cir. 1997).[23]

The District Court erred in denying (without explanation) defendants' request for a missing witness charge for plaintiff's treating physician, Dr. Reff (A-1273-75). As noted in defendants' request, Dr. Reff was the only psychiatrist who had treated plaintiff before the incident and the only physician who was continuously treating her at the time of trial (A-1274). Dr. Reff's testimony was not cumulative of plaintiff's only testifying expert psychiatrist, Dr. Otonichar, who admitted that he did not review any of Dr. Reff's records for the fourteen months before trial and did not speak to plaintiff at any point during that period (A-1348-51). In other words, Dr. Reff was the only physician who had firsthand knowledge of plaintiff's contemporaneous mental condition at the time of trial, and thus the best witness to testify about her damages at trial.

The District Court found defendants were not prejudiced by its denial for a missing witness charge because the medical records were entered into evidence, defendants' expert commented on them, and defendants' counsel was permitted to ask the jury to draw an inference from Dr. Reff's absence. SPA-34-35. But this is

---

[23] "It has not been determined in this Circuit whether a missing witness charge is governed by federal or state law..[n]onetheless, because the standards for federal and New York State law are similar in this area, such a determination is unnecessary." Hai Long Du v. Party Perfect Rentals LLC, 732 F.Supp 3d 249, 252 (EDNY 2024) (citation and quotation marks omitted).

true of every case in which a missing witness charge is applicable and denying the charge on these grounds would in effect eliminate a party's right thereto.

The introduction of Dr. Reff's records amplifies the error of denying the charge. See Wilson v. Bodian, 130 A.D.2d 221 (App. Div. 1987) ("especially in view of the blanket admission of [the treating doctor's] office records, the trial court should have given a missing witness charge as to [that doctor]"). It scarcely bears mentioning that the weight of defendants' counsel's commentary on Dr. Reff's absence pales in comparison to that of a judicial instruction. See DeVito v. Feliciano, 22 N.Y.3d 159, 167 (2013) ("a trial counsel's appeal to the jury during summation is not ordinarily a substitute for the appropriate jury charge by the court; the error here was not cured by the summation").

Given Dr. Reff's unique knowledge of plaintiff's condition, the error cannot be deemed harmless and a new trial is necessary. See Gagnon v. St. Clare's Hosp., 58 A.D.3d 960, 962 (App. Div. 2009) (holding that given the surgeon's account would have been relevant and could have influenced the jury's ultimate determination on liability, the "Supreme Court's decision not to give the missing witness charge cannot be deemed harmless error, notwithstanding plaintiff's opportunity to comment on [the surgeon's] absence during summation…plaintiff is entitled to a new trial").

B.  The District Court Erred In Precluding Defendants
    From Introducing Dr. Fayer's Deposition Testimony

At trial, plaintiff declined to call her expert psychiatrist Dr. Steven Fayer, but never withdrew him as a noticed expert witness. Defendants moved pursuant to F.R.E. 801(d)(2)(C) to read portions of Dr. Fayer's deposition as opposing party statements (A-1320-21), which the court denied (A-1357-58, A-1370-71). This was error.

F.R.E. 801(d)(2)C) provides that a statement is *not* hearsay when "the statement is offered against an opposing party and was made by a person whom the party authorized to make a statement on the subject." There is no dispute that plaintiff retained Dr. Fayer, designated him an expert psychiatrist, and listed him as a trial witness (A-1182, A1183-1203). Thus, Fayer's deposition testimony was not hearsay and should have been admissible at trial. See Walker v. City of Buffalo, 2025 U.S. Lexis 47995, *64 (W.D.N.Y., Mar. 17, 2025) (holding that "[the expert's] deposition testimony, as the [defendant's] testifying expert at trial, is not hearsay under Rule 801(d)(2)(C)…); Glendale Fed. Bank, FSB v. United States, 39 Fed. Cl. 422, 425 (1997) (concluding that the deposition transcript of an expert is a statement of a party opponent under FRE 801(d)(2)(C) "when an expert witness is put forward as a testifying expert at the beginning of trial…an expert witness who is listed as

such when the trial begins has been authorized and his or her prior statements are fair game…").

There can be no doubt that this error unfairly prejudiced defendants by denying them the chance to present evidence from plaintiff's own expert that would have undermined her damages claims (which, of course, explains why plaintiff opted not to call Dr. Fayer in the first place). There is no merit to the District Court's opinion that "the Hotel's claim of prejudice lacks any credibility, given that the Hotel moved before trial to preclude Dr. Fayer from testifying at all" (SPA-33, underline in original). This reasoning would be persuasive had defendants prevailed on their preclusion motion. Because they did not, and because Fayer's absence was procured by plaintiff's tactical decision to withhold him, the court wrongly deprived them of their right under F.R.E. 801(d)(2)(C). Moreover, it is not difficult to understand the strategic benefit of utilizing Dr. Fayer's deposition transcript rather than calling Dr. Fayer himself, as the latter scenario would allow Dr. Fayer to explain and defend his statements, while the former would not.

The District Court's error thus entitles defendants to a new trial on damages.

## **CONCLUSION**

Accordingly, this Court should: (1) reverse the District Court's grant of summary judgment to plaintiff and dismiss her complaint or, alternatively, (2) order a trial on liability, (3) modify the jury's apportionment and order a *remittitur* of the

jury's damages award or, alternatively, (4) order a new trial on apportionment and damages.

**KAHANA & FELD, LLP**

By: Michael J. Curtis, Esq.
*Appellate Counsel for*
*Defendants-Appellants-Cross-Appellees*
800 Third Avenue, 16th Floor
New York, NY 10022
(914) 787-9239
mcurtis@kahanafeld.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify that:

1. This document complies with the type volume limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,539 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Microsoft Word 2013 in 14-point Times New Roman font.

February 2, 2026

*/s/* Michael J. Curtis
Michael J. Curtis

**SPECIAL APPENDIX**

i

## TABLE OF CONTENTS

| | Page |
|---|---|
| Final Judgment, dated July 22, 2025 ......................... | SPA-1 |
| Memorandum and Order of the Honorable Naomi Reice Buchwald, dated November 24, 2025 ......... | SPA-4 |

SPA-1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

MARGARET BETTS,

                Plaintiff,

        - against –

SIXTY LOWER EAST SIDE, LLC,
SIXTY HOTELS, LLC, and SIXTY
HOTEL MANAGER, LLC,

                Defendants.

-------------------------------X
```

                                         **FINAL**

                                      **JUDGMENT**

                            20 Civ. 4772 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      **WHEREAS** in a Memorandum and Order filed on August 21, 2023, the Court granted summary judgment on liability in favor of the plaintiff, Margaret Betts, and against the defendants, ECF No. 75; and

      **WHEREAS** in a Memorandum and Order filed on July 7, 2025, the Court held that the defendants were entitled to rely on N.Y.C.P.L.R Section 1601 at trial, which would permit the jury to "consider and apportion fault between" the defendants and a non-party joint tortfeasor, ECF No. 189 at 2; and

      **WHEREAS** the remaining issue of damages was tried before a jury from July 14 through July 17, 2025; and

      **WHEREAS** the jury reached a unanimous verdict on July 17, 2025, wherein it found that the plaintiff was entitled to (1) two million

dollars ($2,000,000) in damages for pain and suffering until the date of the verdict; (2) seven hundred and fifty thousand dollars ($750,000) in damages for future pain and suffering; and that (3) the damages should be apportioned fifty percent (50%) to the defendants and fifty percent (50%) to the non-party joint tortfeasor; and

**WHEREAS** applying N.Y.C.P.L.R. Section 1601, the liability of the defendants "shall not exceed th[e] defendant[s'] equitable share" of "relative culpability" of fifty percent (50%), _i.e.,_ one million, three hundred and seventy-five thousand dollars ($1,375,000); it is hereby

**ORDERED, ADJUDGED, AND DECREED** that judgment is entered in favor of the plaintiff in the total amount of one million, six hundred and twelve thousand, six hundred and sixty-seven dollars and eighty-one cents ($1,612,667.81), consisting of: (i) one million, three hundred and seventy-five thousand dollars ($1,375,000), reflecting the defendants' equitable share of the jury's total damages award for the plaintiff; and (ii) two hundred and thirty-seven thousand, six hundred and sixty-seven dollars and eighty-one cents ($237,667.81) in pre-judgment interest, which accrued at the statutory interest rate of nine percent (9%), N.Y.C.P.L.R. § 5004(a), from the date of the Court's August 21,

SPA-3

2023 liability finding, ECF No. 75, until the date this judgment
is filed.

Dated:    New York, New York
          July 22, 2025

                              _____
                                NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE

SPA-4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MARGARET BETTS,

                    Plaintiff,

     - against –                          **MEMORANDUM AND ORDER**

                                          20 Civ. 4772 (NRB)
SIXTY LOWER EAST SIDE, LLC,
SIXTY HOTELS, LLC, and SIXTY
HOTEL MANAGER, LLC,

                    Defendants.
------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     This is an appeal from a jury verdict awarding compensatory
damages to Margaret Betts ("plaintiff"), who was sexually
assaulted on October 19, 2018 by a massage therapist engaged by
and sent to her hotel room by Sixty LES (the "Hotel").[1]  Before
sending the masseur, Iouri Astakhov ("Astakhov"), to Ms. Betts'
guest room, the Hotel failed to investigate whether he was licensed
or authorized to practice massage therapy -- as required by New
York State law.  On July 17, 2025, nearly seven years after her
assault, a jury awarded Ms. Betts $1 million in past and $375,000
in future pain and suffering damages, having apportioned fault 50%

---

[1]     Sixty Lower East Side, LLC, Sixty Hotels, LLC, and Sixty Hotel Manager,
LLC (together, "defendants") were the owners and managers of the Hotel at the
time of Ms. Betts' assault.  For purposes of this opinion the Court will, unless
otherwise indicated, use the terms "Hotel" and "defendants" interchangeably.

to 50% between non-party Astakhov and the Hotel.[2] Verdict Form at 2-6. The final judgment entered by the Court on July 22, 2025 also awarded $237,677.81 in pre-judgment interest to Ms. Betts. ECF No. 206 at 2-3. Pre-judgment interest began accruing when the Court, on August 21, 2023, granted summary judgment to Ms. Betts on liability, finding that the Hotel (i) was negligent per se for violating New York Education Law § 7802 and (ii) proximately caused plaintiff's harm by failing to verify if Astakhov was licensed or authorized to practice before soliciting his services. See Betts v. Sixty Lower E. Side, LLC, No. 20 Civ. 4772 (NRB), 2023 WL 5352334, at *7-10, 13 (S.D.N.Y. Aug. 21, 2023) ("SJ Opinion"), appeal withdrawn, No. 23-1289, 2024 WL 1152438 (2d Cir. Jan. 22, 2024), and motion to certify appeal denied, No. 20 Civ. 4772 (NRB), 2024 WL 3104323 (S.D.N.Y. June 24, 2024).

The Hotel filed several post-trial motions, which are addressed in this opinion. First is the Hotel's Rule 59(e) motion

---

[2]     The Court granted the Hotel's pre-trial request for a jury instruction and verdict form providing for the apportionment of fault pursuant to CPLR § 1601. Betts v. Sixty Lower E. Side, LLC, No. 20 Civ. 4772 (NRB), 2025 WL 1869447, at *3 (S.D.N.Y. July 7, 2025); see also ECF No. 218-3 ("Trial Tr.") at 384:4-11. Section 1601 provides that in "action(s) involving two or more tortfeasors," a defendant may seek apportionment of damages "in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss." At the conclusion of trial, the jury nominally awarded $2,000,000 in past damages and $750,000 in future damages to plaintiff. ECF No. 218-4 ("Verdict Form") at 2-3. However, in the apportionment section of the Verdict Form, the jury only found the Hotel 50% at fault, id. at 6, thus reducing defendants' effective liability to a total of $1,375,000 in past and future damages, before interest.

SPA-6

to vacate the Court's summary judgment decision on liability.  ECF No. 219 ("Mot.") at 2; see Fed. R. Civ. P. 59(e).  Also, the Hotel moves to reduce the jury's apportionment verdict and damages award pursuant to Rule 59(e) or, in the alternative, for a new trial pursuant to Rule 59(a)(1)(A).[3]  Id.

## Background[4]

The essential facts of this case are not -- and never were -- disputed.  Ms. Betts was a registered guest at the Hotel in New York City from October 19 to October 21, 2018.[5]  The Hotel offered

---

[3]    On August 7, 2025, plaintiff's counsel filed a two-page "notice of motion" for "additur."  ECF No. 222 at 1.  While counsel promised to file a supporting brief "at a later date," id., no brief was ever filed.  Although this Court is well-familiar with letter motions and does not always require full and formal briefing, the filing of a naked notice of motion without any supporting authority or reasoning does not merit a response and may be considered as an abandonment of the proposed motion.  Moreover, even if the Court were obliged to address plaintiff's notice of motion, it would be denied.  The Supreme Court has held that while orders for remittitur are generally permissible following a jury verdict, "additur [i]s unconstitutional" under the Seventh Amendment.  Gasperini v. Ctr. for Humans., Inc., 518 U.S. 415, 433 (1996)(citing Dimick v. Schiedt, 293 U.S. 474, 486-487 (1935)); see also Fox v. City Univ. of New York, No. 94 Civ. 4398 (CSH), 1999 WL 33875, at * 11 (S.D.N.Y. Jan. 26, 1999) ("[E]ven in a diversity case presenting only state law claims, a federal trial judge cannot make an order of additur, even though his state court colleague could.  [U]nless and until the Supreme Court overrules Dimick v. Schiedt, a state statute such as [CPLR] § 5501(c) cannot trump the United States Constitution.").

[4]    In considering the Hotel's challenge to the Court's summary judgment decision, see infra, Discussion Section I, the Court references the plaintiff's Local Civil Rule 56.1 statement ("Pl. 56.1"), ECF No. 57; defendants' Local Civil Rule 56.1 counterstatement ("Def. Counter 56.1"), ECF No. 62; defendants' Local Civil Rule 56.1 statement ("Def. 56.1"), ECF No. 63-1; plaintiff's Local Civil Rule 56.1 counterstatement ("Pl. Counter 56.1"), ECF No. 66-1.  In considering defendants' challenge to the jury verdict, see infra, Discussion Section II, the Court references the trial transcript, the Verdict Form, filings cited in the parties' briefing, and any evidence properly admitted at trial.

[5]    See Def. 56.1 ¶¶ 10, 37; Pl. Counter 56.1 ¶ 10, 37.

SPA-7

an on-premises spa, available "exclusively to hotel guests," which it advertised in a spa "menu" placed in each room. SJ Opinion at Appendix A (the "Spa Menu"). However, due to the limited capacity of the dedicated spa, the "Spa Menu" also offered in-room massages, which were advertised directly adjacent to the "in-spa" option. Spa Menu at 1 (advertising "customized massage[s] . . . [a]vailable in [the guest's] room"). On October 19, 2018, Ms. Betts requested an in-room massage by calling the front desk.[6] Hotel staff contacted Valeryia Vasilets, an outside massage therapist on their existing list, who was unavailable.[7] Vasilets then contacted Astakhov, who responded that he was available, and referred him to the Hotel.[8] It is undisputed that Astakhov obtained a license to practice massage therapy on October 1, 2008, but that he failed to re-register, as required by law, on November 30, 2013, and has not done so since.[9] It is likewise undisputed that although Astakhov had provided massage services at the Hotel before, the Hotel made no effort to verify at any time whether he was properly authorized as a masseur under New York's licensure statute.

---

[6]    Def. 56.1 ¶¶ 12, 15; Pl. Counter 56.1 ¶¶ 12, 15.

[7]    Def. 56.1 ¶¶ 14, 16-17; Pl. Counter 56.1 ¶¶ 14, 16-17.

[8]    See Def. 56.1 ¶ 17.

[9]    See Verification Search, N.Y. Education Dep't, https://www.op.nysed.gov /verificationsearch?licenseNumber=022139&professionCode=027 (last accessed October 21, 2025); SJ Opinion at Appendix B.

4

After Astakhov's arrival, the Hotel directed him to plaintiff's room.[10] Then, Ms. Betts removed her clothing and lay down on the massage table.[11] While in this vulnerable position, she was sexually assaulted. As described by Ms. Betts:

> During the massage I was laying on my stomach and I fell asleep. And I woke -- I was kind of -- I was groggy waking up, and I felt the massage therapist's hand come all the way up my thigh and then he brought his finger inside my vagina, and it felt rough, and then took it out and massaged down. The next thing he did is he took his other hand and did the same thing. Afterwards, he finished the massage on -- that he was doing as I was on my stomach, and on my back he pinched my nipple. He started massaging my shoulders and he pinched my nipple, and he did -- a friend of mine said, I guess, the best example, a drive-by on the top of my pubic region, pubic hair, my vagina. He took his hand and brush brushed it over it. . . . I froze. During the massage, I froze.[12]

Ms. Betts subsequently reported her assault to the Hotel and to the police.[13] However, since the Hotel failed to retain any contact information for Astakhov, he was not identified until Valisets' deposition two-and-a-half years later.[14]

### **Procedural History**

On June 22, 2020, plaintiff filed a complaint asserting a single negligence claim against defendants. ECF No. 1. After years of discovery and an unsuccessful attempt at mediation, see

---

[10]    Pl. 56.1 ¶ 38.

[11]    ECF No. 1 ¶¶ 30, 33, 58(a).

[12]    Trial Tr. at 23:15-24:4.

[13]    Def. 56.1 ¶¶ 38, 39; Pl. Counter 56.1 ¶¶ 38, 39; ECF No. 64 at 1.

[14]    See ECF No. 63-11 at 22:2-8.

SPA-9

ECF Nos. 45, 53, on August 21, 2023, the Court entered summary judgment in favor of plaintiff on the issue of liability. See SJ Opinion. Defendants did not move for reargument of the summary judgment decision.[15]

Following the entry of summary judgment, the parties conducted discovery on the issue of damages. The Court held two settlement conferences on January 16, 2025, ECF No. 88, and March 11, 2025, ECF Nos. 146, 147, in an attempt to resolve the case short of trial. After those efforts failed, the Court scheduled a jury trial to commence on July 14, 2025. The parties filed six motions in limine, ECF Nos. 158, 159, 176, 184, 197, 199, all of which the Court resolved prior to trial. See ECF Nos. 179, 188, 189, 200, 201, 204. Only two of the pre-trial motions in limine are relevant here: (i) defendants sought a jury charge and verdict form apportioning fault between Astakhov and the Hotel pursuant to CPLR § 1601, which the Court granted, ECF No. 189; (ii) defendants also moved for a missing witness charge for Dr. Robert Reff, one of plaintiff's treating physicians, which the Court denied, ECF No. 188.

---

[15]    Months later, defendants did file a motion to certify the Court's negligence per se finding for interlocutory appeal. See ECF No. 90. We denied the motion because "a reversal of the [negligence per se holding] would not materially advance the ultimate termination of the litigation, as issues of liability would remain, albeit under a different [common law] standard, for resolution at trial." Betts, 2024 WL 3104323, at *2.

SPA-10

At trial, the jury heard testimony from plaintiff, plaintiff's expert psychiatrist, Dr. Joseph Otonichar, and defendants' expert psychologist, Dr. Julie Medlin, regarding plaintiff's various medical conditions and the impact of the Astakhov's assault on plaintiff.  See Trial Tr. at 23-31, 48-95, 168-291.  Defendants were not precluded from calling any witness. Also, defense counsel had the opportunity to cross-examine plaintiff but chose not to do so.  Id. at 31:6.  On July 15, 2025, two days before charging the jury, the Court provided a copy of its draft jury charge and verdict form to the parties at the conclusion of the day's trial testimony.  Id. at 99:16-22.  After counsel had taken the lunch break to review these documents, the Court heard and addressed defense counsel's objections.[16]  Id. at 103, 108-129.

On July 17, 2025, after deliberating for approximately three hours, including time for lunch, the jury returned a verdict in favor of plaintiff.  See Verdict Form.  On August 1, 2025, defendants filed the instant motion to vacate the Court's summary judgment opinion, to alter or amend the jury verdict, or for a new

---

[16]    Defense preserved three objections to the charge.  See Trial Tr. at 117:7-10, 125:14-127:24, 129:3-7.  None of these objections has even been mentioned in the post-trial briefing.

7

trial.[17]   ECF Nos. 217, 218, 219.   On September 8, 2025, plaintiff filed an opposition to defendants' motion, ECF No. 230 ("Opp."), and on September 15, 2025, defendants replied, ECF No. 234 ("Reply").

## Discussion

Altering or amending a judgment pursuant to Rule 59(e) is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." USA Certified Merchants, LLC v. Koebel, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).   A litigant must "satisf[y] the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Hollander v. Members of Bd. of Regents of Univ. of N.Y., 524 Fed.Appx. 727, 729 (2d Cir. 2013) (citation and internal quotation marks omitted); see also Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 (2d

---

[17]    On August 21, 2025, after the Rule 59 motions had been filed, both parties filed notices of appeal, ECF Nos. 223, 224, 225, which are properly treated as a "nullity."   "[T]he Supreme Court has held that a notice of appeal filed after a motion is made to alter or amend a judgment [under Rule 59], and before the district court acts on that motion, is 'a nullity.'"   Nw. Nat. Ins. Co. of Milwaukee, Wisconsin v. Alberts, 937 F.2d 77, 81 (2d Cir. 1991) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61 (1982)); see also Cameron v. Cunningham, No. 13 Civ. 5872 (KPF), 2014 WL 5365978, at *1 (S.D.N.Y. Oct. 22, 2014) (concluding that the court "retains jurisdiction to entertain Petitioner's [Rule 59(e)] motion notwithstanding the notice of appeal he has filed").

SPA-12

Cir. 2008).  Rule 59(e) is neither a "second bite at the apple" for a dissatisfied party, Davidson v. Scully, 172 F. Supp. 2d 458, 464 (S.D.N.Y. 2001) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)), nor a vehicle to advance theories a party failed to articulate in the underlying motion, see Griffin Ins., Inc. v. Petrojam, Ltd., 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999). Importantly, motions to alter or amend lie within the sound discretion of the district court.  Id.

    "[F]or a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . view the jury's verdict as against the weight of the evidence."  Manley v. AmBase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003) (internal citations and quotation marks omitted).  "[A] high degree of deference [is] accorded to the jury's evaluation of witness credibility, and [thus] jury verdicts should be disturbed with great infrequency."  Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012).  In short, "[a] court considering a Rule 59 motion for a new trial . . . should only grant such a motion when the jury's verdict is egregious."  DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998) (citation and internal quotation marks omitted).

I.  **Defendants' Motion to Vacate the Summary Judgment Decision or for a New Trial on Liability**

9

The Hotel moves pursuant to Rules 59(e) and (a) to vacate the Court's summary judgment decision or for a new trial on liability. Mot. at 2. Despite the complete absence of intervening controlling law or new facts,[18] the Hotel reiterates previously-raised arguments, insisting that the Court committed "clear error." We will consider these arguments seriatim.

### a. Violation of Section 7802

We begin with the Hotel's argument that it did not violate Section 7802 of the New York Education Law by sending Astakhov, an unregistered massage therapist, to plaintiff's hotel room. <u>See</u> Mot. at 13-15; SJ Opinion at *7-10. Section 7802 reads as follows:

> Only a person licensed or authorized pursuant to this chapter shall practice massage therapy[.] No person, firm, partnership or corporation claiming to be engaged in the practice of massage or massage therapy shall in any manner describe, advertise, or place any advertisement for services as defined in [Section 7801] of this article unless such services are performed by a person licensed or authorized pursuant to this chapter.

---

[18]     All the arguments now advanced by defendants could have, and should have, been raised in defendants' original summary judgment briefing or, if appropriate, in a subsequent motion for reargument. <u>See</u> Local Civil Rule 6.3. At summary judgment, defendants had access to the same set of liability-related facts as they do now, including (i) Astakhov's licensing history, (ii) the Hotel's actions and knowledge before sending Astakhov to plaintiff's room, (iii) the "Spa Menu" advertising "in-room" treatments, and (iv) the caselaw upon which they now rely. The jury trial recently conducted on the issue of <u>damages</u> generated no new facts relevant to <u>liability</u>. Consequently, defendants have misused Rule 59, which "is not a vehicle for . . . taking a second bite at the apple." <u>Griffin Ins., Inc.</u>, 72 F.Supp.2d at 368 (internal quotation marks omitted).

N.Y. Education Law § 7802; see also Title 8, Article 155, which spans §§ 7800-7807 (regulating the practice of massage therapy).

The Hotel contends that it "[never] claimed to be engaged in in-room massage services," but rather "advised guests that in-room services were supplied by 'independent professionals.'" Mot. at 14. The Court previously considered -- and rejected -- the same argument at summary judgment, explaining that "Section 7802 does not limit its applicability to only entities that employ massage therapists" directly. SJ Opinion at *9. Here, the Hotel advertised the "in-room" treatments alongside the "in-spa" treatments, and informed guests that the same "customized massage" available at the spa was "[a]lso available in your room." Spa Menu at 1. Moreover, the nominally "independent" massage therapists were selected by the Hotel and performed their services on Hotel premises. SJ Opinion at *9; Mot. at 14.

Next, the Hotel argues that because the statutory language is disjunctive -- therapists must be "licensed or authorized" -- and because a massage therapy license is granted "for life," Astakhov was "licensed" as required by Section 7802. Mot. at 14-15. The Hotel raised this exact argument at summary judgment, and it was explicitly rejected. See SJ Opinion at *9. As we previously stated, "[i]t is settled that 'or' may be read to mean 'and' when the context so indicates." SJ Opinion at *9 (quoting Willis v.

11

United States, 719 F.2d 608, 612-13 (2d Cir. 1983)).  Although

"[a] license is issued for life," the plain language of the statute

also mandates that "those who are licensed must register every

three years to continue in active practice."  SJ Opinion at *7.

Practicing without meeting this registration requirement is a

felony, not merely a technical violation.  Thus, "permitting the

practice of massage therapy by someone who is licensed but not

registered to practice would clearly frustrate the legislative

intent of Section 7802 as well as Article 155 more broadly."[19]  Id.

at *9.

### b. Negligence Per Se

We next turn to the Hotel's argument that the Court erred

when it found its violation of Section 7802 constituted negligence

_____

[19]    Defendants urge the Court to "read [the statute] as a whole" and focus on
the "plain language."  Mot. at 14.  That is exactly what the Court has done.
Even under a "plain language" approach, Section 7807 of the Education Law, which
bars unregistered but licensed massage therapists from practice, must be
considered.  "[T]he cardinal rule [is] that . . . statutory language, plain or
not, depends on context."  King v. St. Vincent's Hosp., 502 U.S. 215, 221
(1991).  In this context, "it is simply inconceivable that Section 7802 [wa]s
intended to create a new exception for unregistered massage therapists" because
"practice in New York [by licensed, but unregistered, masseurs] is explicitly
banned."  SJ Opinion at *9 (citing N.Y. Education Law § 7807 ("Each massage
therapist licensed pursuant to this article [is] required to register
triennially with the department to practice in the state," and "shall not
practice until they have met such [registration] requirements, and they have
been issued a registration certificate.") (emphasis added); Professional
Misconduct Enforcement, N.Y. Education Dep't, https://www.op.nysed.gov/
enforcement/professional-misconduct-enforcement (last accessed November 24,
2025) ("[p]racticing a profession without a license and current registration is
a felony in New York State.")  "[C]ourts must give effect .
. . to every clause and word of a statute," Barbera v. Grailed, LLC, No. 24
Civ. 3535 (LJL), 2025 WL 2098635, at *9 (S.D.N.Y. July 25, 2025) (internal
citation and quotation marks omitted), and thus, Section 7802 cannot be read to
render meaningless the registration requirement in Section 7807.

per se.  Mot. at 15-16.  The Hotel cites two non-binding trial
court cases -- both of which were available to defendants at the
summary judgment stage -- to argue that Section 7802 was not
"enacted to protect a specific class of people," Mot. at 16
(quoting Doe v. Spa, 2003 NYLJ LEXIS 974, at *4 (N.Y. Sup. Ct.
2003)), and does not "set forth a specific standard of care," id.
(quoting Revercomb v. Aire Ancient Baths S.L., 2019 N.Y. Misc.
LEXIS 1567, at *23 (N.Y. Sup. Ct. 2019)).

       Spa and Revercomb are not "get out of jail free" cards, both
because they are non-binding decisions, and because they are
contradicted by other New York cases.  "When a statute [is]
designed to protect a particular class of persons against a
particular type of harm . . . , a court may, in furtherance of the
statutory purpose, interpret the statute as creating a[] standard
of care" and find defendants "negligent per se."  Auz v. Century
Carpet, Inc., No. 12 Civ. 417 (LGS), 2014 WL 199511, at *3
(S.D.N.Y. Jan. 17, 2014) (quoting Dance v. Town of Southampton,
467 N.Y.S.2d 203, 206 (2d Dep't 1983)) (emphasis added).  Put
differently, when a statute is "designed to protect a particular
class of persons against a particular type of harm" the statutory
provision and the "standard of care" merge.  Id.  In this context
we quoted Dillon v. Kim in our summary judgment decision: "the
purpose . . . of Article 155 of the Education Law, which provides

13

for the licensure of persons practicing the profession of massage . . . is to insure the welfare and safety of persons seeking, not touching of a sexual nature, but rather massage therapy free of sexual or other inappropriate contact." SJ Opinion at *10 (quoting Dillon v. Kim, 158 Misc. 2d 711, 717 (Sup. Ct., Nassau Cnty., June 23, 1993)). "A person who receives massage therapy in their . . . hotel room relies upon the licensure statutes . . . to protect him or herself from harmful and/or sexual touching." Dillon, 158 Misc. 2d at 717; see also Ezagui v. Dow Chemical Corp., 598 F.2d 727, 733 (2d Cir. 1979) (finding that a violation of the New York Education Law can constitute negligence per se).[20]  Thus, this Court properly found that the Hotel's violation of Section 7802 of Article 155 constituted negligence per se, and any modification of that holding is unwarranted.

---

[20]  Defendants claim that "this Court . . . announced having 'made law'" by finding them negligent per se.  Mot. at 16 (citing Trial Tr. at 44:5). Defendants' challenge prompts the following commentary.  Had we not found negligence per se, we would have, given the serious facts, devoted additional consideration to the common law negligence claim.  Instead, we applied existing case law on common law negligence, which generally holds that a "reasonably prudent person" does not have an obligation to conduct a background check on a prospective employee, see SJ Opinion at *12-13 (citing KM v. Fencers Club, Inc., 164 A.D.3d 891, 893 (2d Dep't 2018)), without addressing whether existing precedent was fully analogous to the facts in this case.  Had our focus been on the common law negligence claim, the Court can state with some confidence that we would have held defendants liable: the act of sending a masseur to Ms. Betts' room where she would be unclothed, without even verifying his contact information, let alone his licensing status, would be negligent at common law, and defendants' actions distinguishable from existing caselaw.

### c. Proximate Cause

Next, the Hotel argues that because proximate cause is "fact-specific" and generally resolved by the jury, the Court erred when it found the Hotel proximately caused plaintiff's injuries. Mot. at 17-18. Again, we explicitly addressed this argument in our summary judgment decision, where "we acknowledge[d] that the issue of proximate cause is usually determined by a jury," but explained that "where, as here, the facts are undisputed, the question becomes one for the court." SJ Opinion at *10 (quoting Comolli v. 81 & 13 Cortland Assocs. L.P., 285 A.D.2d 863, 864 (3d Dep't 2001) (internal citations omitted)). Indeed, the Hotel's own case, see Mot. at 17, makes clear that "[a]lthough foreseeability and proximate cause are generally questions for the factfinder, there are instances in which proximate cause can be determined as a matter of law because only one conclusion may be drawn from the established facts," Hain v. Jamison, 28 N.Y.3d 524, 529 (2016) (internal quotation marks omitted).

"[O]nly one conclusion may be drawn" from the undisputed facts here. Hain, 28 N.Y.3d at 529. The Hotel's actions were the proximate cause of plaintiff's injury because "if [the Hotel] had verified whether Astakhov was authorized to practice in New York, as is required under Section 7802, [it] would have learned he was not and thus could not have lawfully permitted Astakhov to perform

15

plaintiff's massage." SJ Opinion at *10. Likewise, "it was reasonably foreseeable that plaintiff's assault could result" because "the . . . registration requirements set forth in Article 155 are specifically intended, at least in part, to prevent sexual misconduct." Id. The Hotel cites no new or controlling caselaw that would compel a different result, instead opting to regurgitate arguments made in its summary judgment briefing.

## II. Defendants' Motion to Alter or Amend the Jury Verdict, or for a New Trial on Damages

In addition to challenging the Court's summary judgment decision on liability, the Hotel also moves to modify the apportionment verdict and reduce the damages award, or, in the alternative, for a new trial on damages. Mot. at 2. The Hotel argues (i) that the jury's apportionment of fault was "irrational and requires modification"; (ii) that the damages award was "excessive"; (iii) that plaintiff's counsel's summation was prejudicial; (iv) that the Court improperly denied the Hotel's request to read non-testifying expert Dr. Fayer's deposition testimony into evidence; and (v) that the Court improperly refused to issue a missing witness charge for Dr. Reff, a non-testifying treating psychiatrist. See id. at 18-25. The Court will address the Hotel's arguments in order.

a. Apportionment

CPLR § 1601 provides that in a "[personal injury] action involving two or more tortfeasors," a defendant may seek apportionment of damages "in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss." CPLR § 1602 lists a series of enumerated exceptions to Section 1601, including where a defendant seeking apportionment "acted with reckless disregard for the safety of others." CPLR § 1602(7). In an in limine motion, see ECF Nos. 178, 181, 182, the Hotel moved for an instruction pursuant to CPLR § 1601, to have the jury apportion fault between the Hotel on the one hand and non-party Astakhov on the other. The Court granted the Hotel's motion. See Betts, 2025 WL 1869447, at *3. The Court also rejected plaintiff's argument that the "recklessness" exception to apportionment applied, because "'negligence per se' is [not] the equivalent of 'recklessness' for the purposes of the § 1602(7) exception to § 1601."[21] Id.

As we explained, supra p. 2 n.2, the Hotel's liability was reduced from $2,750,000 to $1,375,000, when the jury found the

---

[21]    If defendants were to succeed in overturning the Court's finding of negligence per se on appeal, and if the Court were to focus its attention once again on common law negligence, see supra p. 14 n.20, it is possible the Court would find defendants "reckless" under a common law standard, and thus deny defendants the benefit of apportionment in any new trial. See CPLR § 1602(7) (denying apportionment to "reckless" defendants).

17

SPA-21

Hotel only 50% at fault. Despite having benefitted from the apportionment charge, the Hotel now argues it should only be 5% responsible because a "non-negligent and vicariously liable premises owner cannot" be equally culpable as an intentional tortfeasor. Mot. at 2, 18.

The Hotel's effort to avoid responsibility and shift virtually all responsibility to Astakhov through a post-trial motion must be viewed in the context of its decision not to add Astakhov as a third-party defendant, even after his identity was determined. See ECF No. 63-11 at 22:2-8. The Hotel opted to apportion fault to Astakhov in absentia. While this approach was legally permissible, it is worth noting that defendants passed on an opportunity to find and depose Astakhov, and thus potentially persuade the jury that the Hotel was less at fault.[22]

Regardless, "[t]he apportionment of fault among the parties is . . . an issue of fact for the jury, and . . . should not be set aside unless it could not have been reached based upon a fair interpretation of the evidence." Fruendt v. Waters, 164 A.D.3d 559, 560 (2d Dep't 2018). As plaintiff rightly observes, the Hotel "select[ed], advertise[d] [and] sen[t] the tortfeasor to the

---

[22] The Court well appreciates defendants' decision-making process. However, having chosen a strategy, defendants have no basis to avoid the apportionment verdict reached by the jury.

18

plaintiff," yet failed to verify whether he was registered to practice massage therapy before doing so. Opp. at 16-17. In such circumstances, even an award that apportioned <u>greater</u> responsibility to the Hotel would have been reasonable. Thus, the jury's apportionment of equal fault was a "fair interpretation" of the evidence presented.[23]

The Hotel's attempts to characterize its actions as "non-negligent" are fruitless. Mot. at 18. First, the Hotel tacitly admits to a certain level of culpability by conceding that it is "5%" responsible. <u>Id.</u> Second, by asking the jury to apportion "fault," Verdict Form at 6, the Hotel, in essence, got a second opportunity to argue proximate cause. Yet the Hotel failed to convince the jury at trial -- just as it failed to convince the

---

[23] During his summation, plaintiff's counsel repeatedly stated that "the hotel should be 100 percent responsible" and implied that the Court's summary judgment decision had already resolved the issue of apportionment. Trial Tr. at 363:8-18 ("MR. NAPOLI: This would never have happened if they had properly checked him out . . . [t]hat's what the judge decided. . . . the hotel should be 100 percent responsible. 100 percent."); <u>see also</u> <u>id.</u> at 364:4, 364:20-22, 365:17-22. Defendants argue that these statements were prejudicial. Mot. at 19. However, there was no prejudice from plaintiff's counsel's comments. Defense counsel objected <u>immediately</u>, and we upheld the objection in front of the jury on at least four separate occasions. Trial Tr. at 363:22-23, 364:6-25, 365:6-7, 366:1-7. The Court also gave curative instructions to the jury, which clarified that apportionment was the <u>jury's</u> prerogative and that the Court had reached no prior decision on the issue. <u>See</u> Trial Tr. at 365:6-7 ("The Court: The question on the [verdict] form [regarding apportionment] is the question you [the jury] will answer however you want to answer it."); <u>see also</u> <u>id.</u> at 7:13-8:5; 324:19-22; 405:4-12. A curative instruction was the only remedy defendants were entitled to under the law. <u>United States v. Coffey</u>, 823 F.2d 25, 28 (2d Cir.1987) ("[P]rompt curative instructions suffice[] to eliminate any unfair prejudice that might have resulted from a fact being placed unfairly before the jury.").

Court at summary judgment -- that it was not responsible for plaintiff's harm. See SJ Opinion at *10; Verdict Form at 6.

Lastly, the Hotel's cited cases are easily distinguishable. See Roseboro v. N.Y. City Trans. Auth., 10 A.D.3d 524 (1st Dep't. 2004); Stevens v. N.Y. City Trans. Auth., 19 A.D.3d 583 (2d Dep't 2005). Both cases involved third-party tortfeasors who were members of the general public, rather than a tortfeasor hired and sent by a defendant to a plaintiff's private room. Roseboro, 10 A.D.3d at 525; Stevens, 19 A.D.3d at 584. Moreover, in neither case was the defendant the "but-for" cause of plaintiff's injuries. See Roseboro, 10 A.D.3d at 525 (guard "slept at his post," but it was uncertain whether he could have stopped the assault by the third-party tortfeasor in time); Stevens, 19 A.D.3d at 584 ("train operator activated the emergency brak[e]. . . but was unable to stop in time" to avoid plaintiff, who was pushed onto the track by a third-party). Here, there is no doubt that if the Hotel had verified Astakhov's registration status, and acted as required by statue, plaintiff's harm would never have occurred. SJ Opinion at *10.

### b. Reasonable Compensation Under CPLR 5501(c)

We next turn to the Hotel's argument that the jury's damages award was excessive. Mot. at 20-23. At trial, the jury awarded $1 million in past and $375,000 in future damages. Verdict Form

at 2-3; see also ECF No. 206. Yet despite the seven years of suffering Ms. Betts has endured since her assault in October 2018, and despite the many years of future pain she will experience as a consequence of this trauma, the Hotel urges the Court to reduce her award to a wholly unrealistic, "five-figure amount."[24] Mot. at 22.

"In considering a Rule 59 motion . . . where the court exercises diversity jurisdiction, the court applies the governing state law . . . regarding the appropriateness of a damages award." Vesely v. Long Island R.R. Co., No. 20 Civ. 2725 (PKC), 2022 WL 3974431, at *1 (S.D.N.Y. Sept. 1, 2022) (citing Gasparini, 518 U.S. at 420-21). CPLR § 5501(c) states in relevant part that "[i]n reviewing a money judgment in an action . . . [courts] shall determine that an award is excessive . . . if it deviates materially from what would be reasonable compensation." "A district court applying [CPLR § 5501(c)] reviews the evidence presented at trial in support of the challenged damage award and

---

[24] The $1 million awarded by the jury for past suffering amounts to $142,857.14 per year for the seven years since plaintiff's assault in October 2018, hardly an unreasonable amount. The $375,000 allocated for future damages is even more reasonable, given that plaintiff will continue to experience PTSD and other symptoms connected to the assault, potentially for decades to come. The Court also notes that rather than settling the case, the Hotel compounded its own liability by choosing to incur a 9% interest rate running from the date of the summary judgment decision, which amounts to $237,677.81 in additional liability beyond the $1,375,000 awarded by the jury. See ECF No. 206 (awarding a total of $1,612,667.81, including interest).

compares the award to [similar] New York cases." <u>Rangolan v. Cnty.
of Nassau</u>, 370 F.3d 239, 244 (2d Cir. 2004) (citation and internal
quotation marks omitted).  However, previous "awards are not
binding on the Court, but are merely <u>instructive</u>." <u>Lewis v. City
of New York</u>, 689 F. Supp. 2d 417, 430 (E.D.N.Y. 2010) (emphasis in
original); <u>see also</u> <u>Vesely</u>, 2022 WL 3974431, at *1-2 (finding
previous awards not "binding" under CPLR § 5501(c)).

Even if one assumed that jury verdicts in other, factually
unique cases are somehow binding,[25] which of course they are not,
the verdicts in the Hotel's cited cases do not differ materially
from the verdict reached here.  Mot. at 20-22.  In almost all
instances, the jury awarded six or seven figures in damages.[26]
Most of the remaining verdicts were reached decades ago, when the
value of a dollar was significantly higher.[27]  See <u>Jennings v.</u>

---

[25]    Defendants' argument -- that other verdicts are dispositive of this one
-- if taken to its logical conclusion, would effectively restrict juries to a
range of damages awards, clustered around the average of previous awards.
This, of course, is not the law.  <u>See Lewis</u>, 689 F. Supp. 2d at 430.

[26]    <u>See Doe v. Hyassat</u>, No. 18 Civ. 6110 (PGG) (OTW), 2024 U.S. Dist. LEXIS
67482 (S.D.N.Y. April 11, 2024) ($1,250,000 award); <u>Villalta v. JS Barkats,
P.L.L.C.</u>, No. 16 Civ. 2772 (RAR) (WL), 2021 WL 2458699 (S.D.N.Y. Apr. 16, 2021),
<u>report and recommendation adopted</u>, No. 16 Civ. 2772 (RA), 2021 WL 2458023
(S.D.N.Y. June 16, 2021) ($350,000 in compensatory damages for emotional harm);
<u>Noonan v. Becker</u>, No. 14 Civ. 4084 (LTS)(JLC), 2018 U.S. Dist. LEXIS 60704
(S.D.N.Y. April 10, 2018) ($1,013,0000 compensatory damages); <u>Feldman v. Knack</u>,
170 A.D.3d 667 (2d Dep't 2019) ($450,000 in compensatory damages); <u>Doe v.
Alsaud</u>, 2017 U.S. Dist. LEXIS 167359 (S.D.N.Y. Oct. 10, 2017) ($1,250,000 in
compensatory damages); <u>Schneider v. National R.R. Passenger</u> Corp., 987 F.2d 132
(2d Cir. 1993) ($1,750,000 award); <u>Doe v. Warren</u>, No. 13 Civ. 571, 2024 U.S.
Dist. LEXIS 106767, *28-29 (S.D.N.Y. 2024)($500,000 in compensatory damages).

[27]    <u>See Dupree v. Guigliano</u>, 87 A.D.3d 975 (2d Dep't 2011); <u>Camacho v.
Rochester City Sch. Dist.</u>, 20 A.D.3d 916 (4th Dep't 2005); <u>Schneider v. National</u>

Yurkiw, 18 F.4th 383, 393 n.7. (2d Cir. 2021) (explaining that "we do not believe that the . . . award against [defendants] warrants remittitur" after "accounting for inflation").

The Hotel endeavors to distinguish the recent multi-million-dollar award to E. Jean Carroll, the plaintiff in several highly publicized sexual assault cases in this district. See Reply at 7-9; see also Opp. at 19. While the Carroll cases did involve claims of defamation, see Reply at 7, the trial court confirmed, and the Second Circuit upheld, a damages award for the assault on Ms. Carroll in the mid-1990s. Carroll v. Trump, 683 F. Supp. 3d 302, 327 (S.D.N.Y. 2023), aff'd, 124 F.4th 140 (2d Cir. 2024) (upholding a $2 million compensatory damages award for the sexual assault specifically). In Carroll, the jury found that the defendant "deliberately and forcibly penetrated [plaintiff's] vagina with his fingers." 124 F.4th at 153. That fact pattern is remarkably similar to this case, where Astakhov "digital[ly] penetrat[ed] . . . plaintiff's vagina." Mot. at 20. If anything, the assault on Ms. Betts was more terrifying, given that she was unclothed and isolated in a hotel room at the time of her assault.[28]

---

R.R. Passenger Corp., 987 F.2d 132 (2d Cir. 1993); Laurie Marie M. v. Jeffrey T.M., 159 A.D.2d 52 (2d Dep't 1990).

[28] The Hotel protests that the Second Circuit only explicitly employed the 5501(c) standard to analyze a separate defamation verdict, see Carroll v. Trump, 151 F.4th 50, 80 (2d Cir. 2025), and only "the trial court . . . reviewed the sexual assault award under CPLR 5501(c)," Reply at 7-9 (citing Carroll, 683 F. Supp. 3d at 328) (emphasis added). However, all CPLR 5501(c) requires is that

The Hotel's efforts to minimize plaintiff's injuries because she had pre-existing psychological conditions or received massages subsequent to her assault[29] are also unavailing.  Mot. at 20.  The jury was well-aware of plaintiff's psychological history and heard this testimony, as well as other evidence that plaintiff suffered additional and distinct harms as a direct result of her assault.  See, e.g., Trial Tr. at 56:11-15 (Dr. Otonichar testified that plaintiff suffered heightened and additional symptoms of PTSD, including "symptoms that are different in that they are related to the content of the sexual assault" such as "flashbacks of the reported assailant's face [and] nightmares that involved themes of sexual trauma and violence.").  Given this evidence, the verdict was more than reasonable, and there is no cognizable basis to intrude on the jury's factfinding role.

### c. Plaintiff's Counsel's Summation

Next, we turn to the Hotel's argument that a series of supposedly prejudicial comments made by plaintiff's counsel during

---

the Court "compare[] the award to other New York cases."  Rangolan, 370 F.3d at 244 (emphasis added).  Moreover, the district court opinion, including the portion concerning the sexual assault damages, was affirmed by the Second Circuit.  See Carroll, 124 F.4th at 150.  An appellate court need not explicitly opine on every portion of the lower court decision in its affirmance.

[29]    Plaintiff testified that she received two massages at different hotels on unspecified dates after her January 2021 deposition, almost three years after her assault by Astakhov.  See Mot. at 21 (citing Trial Tr. at 156); see also Trial Tr. at 156:12-158:13.

his summation warrant "a new trial or additional remittitur." Mot. at 22-23. We will discuss each of these comments in order.

First, plaintiff's counsel's statement that the Hotel's expert was a "hired gun," Mot. at 22, is not a ground for vacatur, because parties are free to inquire about an opposing expert's compensation. Indeed, Rule 26(a)(2)(B)(vi) <u>requires</u> an expert to disclose their compensation, and it is well-established that "examining a[n] [expert] witness's compensation in an effort to impeach for bias is permissible." <u>Cary Oil Co. v. MG Ref. & Mktg., Inc.</u>, 257 F. Supp. 2d 751, 757 (S.D.N.Y. 2003); <u>see also</u> <u>LNC Inv., Inc. and Charter Nat'l Life Ins. Co. v. First Fid. Bank</u>, No. 92 Civ. 7584 (CSH), 2000 WL 1182772, at *2 (S.D.N.Y. Aug.21, 2000) ("[Litigants] are entitled to very considerable latitude in inquiring into circumstances that may show bias on the part of the witness in favor of the party calling him."). Although the Hotel's cited case found counsel's "hired gun" comment "unbecoming," it also stated that in most cases "these improper remarks probably would have been attributed to excessive zeal and forgiven as harmless." <u>Steidel v. County of Nassau</u>, 182 A.D.2d 809, 814 (2d Dep't 1992).

Second, plaintiff's counsel's urging of a "gargantious" award was non-prejudicial. Mot. at 23 (citing Trial Tr. at 332:8). "[A]ttorneys are generally afforded latitude in formulating their

25

arguments" and "[n]ot every improper or poorly supported remark in summation warrants a new trial." Clark v. Westchester Cnty., No. 96 Civ. 8381 (DLC), 1998 WL 709834, at *8 (S.D.N.Y. Oct. 9, 1998) (citation and internal quotation marks omitted). Indeed, plaintiff's counsel was no doubt inspired to create such language because the Court had precluded counsel from mentioning a specific number. Trial Tr. at 332:12-14 ("[Plaintiff's] Counsel is not allowed . . . to mention a [specific] number to you"); see also Nunez v. Diedrick, No. 14 Civ. 4182 (RJS), 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) ("the Second Circuit has . . . expressed its 'disfavor' of 'specifying target amounts for the jury to award' and has 'encourage[d]' district judges to 'bar' plaintiffs from doing so in light of the strong likelihood of unfair prejudice.") (quoting Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1016 (2d Cir. 1995), as amended (Dec. 22, 1995), vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp., 518 U.S. 1031 (1996)). Having received the benefit of the Court's instruction barring mention of a specific number, the Hotel cannot now claim prejudice arising from plaintiff's counsel's use of a non-specific adjective.

Third, there is no prejudice resulting from plaintiff's counsel's "vouch[ing] for the credibility of [a] non-testifying witness," Mot. at 23, because the Court immediately and

unequivocally upheld defense counsel's objection.  See Trial Tr. at 334:12-15 ("MR. SOBEL: [Plaintiff's counsel is] vouching for witnesses that weren't called.  THE COURT: You[, plaintiff's counsel,] cannot vouch.").  This cured any potential prejudice. See United States v. Shareef, 190 F.3d 71, 79 (2d Cir. 1999) ("[A]lthough . . . [counsel's] summation [comments] were improper . . . these transgressions were isolated; the trial court upheld [defendant's] objections[.]").

Lastly, there was no prejudice from plaintiff's counsel's improper suggestion that the jury "conduct[] independent internet research."  Mot. at 23.  The Court had given a preliminary instruction to the jury not to conduct internet research, see Trial Tr. at 6:10-13, and immediately upheld defense counsel's objection when plaintiff's counsel subsequently asked the jury to do so, id. at 359:3-6, 359:10-13 ("The Court: [The Jury] are specifically instructed not to do research on their own.  That rule applies to [plaintiff counsel's] comments.  You[, plaintiff's counsel,] do not put in evidence or claim that they can go on Google and do something.").  This cured any potential prejudice.  Shareef, 190 F.3d at 79.

### d. Evidentiary Rulings at Trial

Finally, we address the Hotel's challenge to several evidentiary rulings made by the Court during the trial.  See Mot. at 23-25.  We will consider each objection in order.

### i.   Dr. Fayer

The Hotel argues that the Court erred by denying it permission to read portions of the deposition testimony of Dr. Steven Fayer, a non-testifying expert psychiatrist engaged by plaintiff, into the record.  Mot. at 23-24.  Specifically, the Hotel contends that Dr. Fayer's deposition testimony is a "statement by a party opponent" under Federal Rule of Evidence 801(d)(2)(C), because Dr. Fayer was "an opposing party . . . whom [plaintiff] authorized to make a statement" on behalf of plaintiff.[30]  Mot. at 23-24.  The Hotel advances this argument without any recognition of, or effort to distinguish, clear authority to the contrary.

---

[30]     The Court previously denied the Hotel's application at trial, when the Hotel brought it under Federal Rule of Civil Procedure 32(a)(3) (Deposition of Party, Agent, or Designee).  See Trial Tr. at 95:24-96:8 ("The Court: Mr. Sobel was, as he told me, relying on Rule 32(a)(3).  So the record is clear, [Rule 32(a)(3)] reads as follows: An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).  The expert is not a 30(b)(6) witness, nor is the expert a 31(a)(4) witness, which involves depositions on written questions, for a public or private corporation, partnership, or government agency.").  Defense counsel also cited to Rule 801(d) at trial, see id. at 45:19-20, and the Court initially rejected defendants' argument due to a lack of supporting caselaw, id. at 96:15-20.  Defense counsel promised to "brief [the Rule 801 issue] for [the Court]," id. at 96:21-22, but waived the argument by failing to do so by the end of trial.  Nevertheless, the Court will, for the avoidance of doubt, address the Rule 801 argument here.

> [D]espite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. . . . Rule 801(d)(2)[(C)] requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony.
> . . .
>
> Because an expert witness is charged with the duty of giving <u>his or her</u> expert <u>opinion</u> regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party.

<u>Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.</u>, No. 11 Civ. 6201 (DLC), 2015 WL 539489, at *10 (S.D.N.Y. Feb. 10, 2015) (quoting <u>Kirk v. Raymark Indus., Inc.</u>, 61 F.3d 147, 164 (3d Cir. 1995)); <u>see also</u> <u>Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC</u>, No. 12 Civ. 7372 (LJL), 2020 WL 5518146, at *4 n.6 (S.D.N.Y. Sept. 14, 2020) ("[Defendant] originally stated its intent to call Francis A. Longstaff as an expert witness, but withdrew him <u>midway through trial</u>. [Plaintiff] offered excerpts from Longstaff's deposition" and "[t]he Court excluded that testimony" because "the deposition testimony is classic hearsay and does not constitute the admission of a party opponent[.]") (emphasis added); <u>Fordec Realty Corp. v. Travelers Excess & Surplus Lines Co.</u>, No. 18 Civ. 85 (ALC) (KNF), 2020 WL 6530889, at *4 (S.D.N.Y. Aug. 3, 2020) ("Since . . . experts are not authorized to make statements on the

[party's] behalf, Rule 801(d)(2)(C) is inapplicable.") (internal quotation marks omitted), report and recommendation adopted, No. 18 Civ. 00085 (ALC), 2020 WL 5759021 (S.D.N.Y. Sept. 28, 2020).

Dr. Fayer was not a "party opponent" because he was neither "authorized" to make a statement on plaintiff's behalf, Fed. R. Evid. 801(d)(2)(C), nor an "agent," Fed. R. Evid. 801(d)(2)(D), and thus his deposition testimony was properly excluded.[31] Moreover, the Hotel's claim of prejudice lacks any credibility, given that the Hotel moved before trial to preclude Dr. Fayer from testifying at all. See ECF No. 179 at 17-19 (denying defendants motion to exclude Dr. Fayer under Rule 702(b)-(d)).

### ii. Dr. Reff

The Hotel next argues that the Court erred in refusing to grant a missing witness charge for Dr. Robert Reff, a non-

---

[31]    The Hotel's cited cases are not to the contrary.  In Glendale Fed. Bank, FSB v. United States the court held that "[w]here an expert witness is withdrawn prior to trial . . . the prior deposition testimony of that witness may not be used."  39 Fed. Cl. 422, 425 (1997); see also Opp. at 25.  The Hotel responds that Dr. Fayer was never formally withdrawn as a witness prior to trial, and plaintiff "conflate[s] the passive act of not calling an expert witness with the affirmative act of withdrawing that witness."  Reply at 11-12.  The Court is aware of no authority demonstrating this distinction is relevant, especially given that defense counsel was aware Dr. Fayer would not be called. See Trial Tr. at 15:3-4 ("MR. SOBEL: [Plaintiff] also retained a Dr. Fayer who is not going to be called.").  Similarly, in Walker v. City of Buffalo, the court was deciding on a motion where the expert was "currently identified as a testifying expert witness for the County in the trial set to begin on March 18, 2025," No. 22 Civ. 520 (MAV), 2025 WL 828242, at *20 (W.D.N.Y. Mar. 17, 2025) (emphasis added), and explicitly declined to rule on the scenario "if the County withdrew . . . it[]s expert" because "[t]hat circumstance is not presently before the Court," id. at *21 n.12.

30

testifying treating psychiatrist for Ms. Betts.  Mot. at 24-25;
see also ECF No. 188 at 4.  To start, Dr. Reff was never listed as
a trial witness.  ECF No. 188 at 1.  The Hotel insists that because
Dr. Otonichar, plaintiff's testifying expert, "only reviewed
plaintiff's medical records[, including records produced by Dr.
Reff,] through January 10, 2024," and did not review Dr. Reff's
subsequent records, Dr. Reff's testimony was essential.  Mot. at
24; see also ECF No. 188.  Dr. Reff, the Hotel urges, "was the
only medical witness who could speak to plaintiff's condition for
the eighteen-month period preceding the trial," and his absence
warranted an "adverse inference."  Mot. at 24.

It is well-established that "[w]hether a missing witness
charge should be given lies in the sound discretion of the trial
court."  United States v. Torres, 845 F.2d 1165, 1170 (2d Cir.
1988).  Even where an important prospective witness is absent, it
is appropriate for a "judge [to] refrain[] from commenting on the
inference to be drawn . . . and allow[] counsel instead to argue
the inference."  United States v. Saa, 859 F.2d 1067, 1076 (2d
Cir. 1988) (citation and internal quotation marks omitted).  Here,
the Court permitted defense counsel to ask the jury to draw an
inference from Dr. Reff's absence.  See Trial Tr. at 313:25-314:4
("MR. SOBEL:  It was plaintiff's conscious choice not to bring the
doctors who know her best[.] . . . [N]either Dr. Reff, nor Dr.

Wilson[, a treating addiction specialist,] came [be]for[e] you.").
Moreover, defendants' observation that "[u]nlike Dr. Otonichar,
Dr. Medlin's review included . . . records from Dr. Reff through
June, 2025," militates against any finding of prejudice.  Mot. at
7; see also id. at 24-25.  It is evident from the trial record
that the defense counsel viewed Dr. Reff's absence as bolstering
his client's case, because Dr. Medlin was free to opine on Dr.
Reff's most recent records without fear of contradiction by either
Dr. Otonichar or Dr. Reff himself.[32]

    Lastly, Dr. Reff's live testimony would have been cumulative
because his full records were admitted without objection into
evidence.  Trial Tr. at 48:2-6, 105:21-23; see also Cuevas v. St.
Luke's Roosevelt Hosp. Ctr., 95 A.D.3d 580, 580-81 (1st Dep't 2012)
("The trial court properly refused . . . a missing witness charge
[because] [t]he physician's notes and records had been entered
into evidence by stipulation.").

**Conclusion**[33]

---

[32]    Trial Tr. at 315:9-22 ("MR. SOBEL: . . . I'd like to contrast [Dr.
Otonichar's review] with Dr. Medlin . . . [who] reviewed every single record up
until June 25th, of 2025 just a couple weeks ago."); see also id. at 176:1-7.

[33]    The Court is aware that defendants requested oral argument.  See Mot. at
1.  However, given that our decision is based on clear legal doctrine, and given
the Court's familiarity with the case and trial record, the Court determined
that oral argument would not be productive.

32

SPA-36

For the preceding reasons, defendants' motion to vacate the Court's summary judgment decision, to alter or amend the jury's trial verdict, or for a new trial on liability and/or damages, is denied in its entirety.  Plaintiff's waived motion for additur, to the extent that it may be considered a motion at all, is also denied.  The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 217 and 222.

**SO ORDERED.**

Dated:    November 24, 2025
          New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE